**Claudie F. JONES, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 82–4487

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

April 14, 1983.

Rehearing Denied May 3, 1983.

Jessie L. Evans, East MS Legal Services, Forest, Miss., for plaintiff-appellant.

E. Donald Strange, Asst. U.S. Atty., Jackson, Miss., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This action was brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services, terminating appellant's award of disability insurance benefits. We find that the Secretary's decision was supported by substantial evidence. We therefore affirm the summary judgment of the district court upholding that decision.

I.

Claudie F. Jones was born on August 15, 1934, and resides in Raleigh, Mississippi. She is divorced and has a fifteen-year old mentally retarded son living with her. She has an eighth grade education. Previously she has been employed as a sewing machine operator in various garment plants and as an employee in a woodworks factory making cabinets for stereo and television sets. Mrs. Jones had a fairly consistent work record from 1950 through 1975, at which

time she was forced to stop work due to severe back pain. She then underwent a lumbar laminectomy for excision of a herniated disc at the fifth lumbar and first sacroiliac interspace, and was awarded disability benefits beginning in May, 1975. Upon a continuing disability investigation, it was determined that her disability had ceased as of July 1977, and her benefits were terminated that September.

Nine months later, in June, 1978, Mrs. Jones filed a new application and was awarded disability benefits beginning in August, 1978. She was notified on October 20, 1980, that her impairments no longer prevented her from engaging in all substantial gainful activity, and that November, 1980, was the last month for which she was entitled to benefits. She then filed a request for a hearing on the termination of her disability benefits, and also filed a new application for supplemental social security income. Following a hearing in August, 1981, the administrative law judge concluded that Mrs. Jones' impairments were sufficiently debilitating to prevent her from engaging in her past work. At the same time, however, the ALJ found that sedentary work was within her "residual functional capacity", and thus, that she was not "disabled" to the extent that she cannot engage in any substantial gainful work. *See* 42 U.S.C. § 423(d)(2)(A).

Mrs. Jones has suffered from poor health due to numerous operations for back injuries and hernia problems. She was last operated on in November, 1979, for a removal of an extruded disc fragment. She was hospitalized from January 5, to January 13, 1981, for continued lower back and left leg pain. At the hearing before the Administrative Law Judge, Mrs. Jones testified that she suffers from severe pain as a result of back injuries, arthritis, and has had seven hernia operations. She stated that her back is getting "like it was" before her last surgery, that she has arthritis in her hands, and that her knees and legs "jump" so that she has to sit on the side of the bed to relieve the pain. She testified that her stomach pain is often so severe that she must go to bed. She also has a burning sensation in her neck and head approximately three times a week which she believes is the result of her back injury. She testified that her nerves get "pretty bad at times." She prays a lot and takes "a nerve pill". Her daily activities consist of watching her son, watching TV, and reading the Bible. Mrs. Jones estimated that she walked about a mile to a mile and a half each day in order to relieve the pain in her legs. Her daughter, Katie Goodhue, lives about 65 miles from Mrs. Jones and visits approximately three times a month to help her clean the house and do other housework. Mrs. Goodhue testified that her mother's condition is worse since she was last released from the hospital and that she "can't do hardly anything". Mrs. Jones stated that she is unable to sweep or mop because of her back: If she moves she has spasms similar to those accompanying a heart attack. She cannot sleep on her bed, cannot sit in chairs, and cannot stand for long.

The medical evidence received at the hearing included reports made by two doctors at the request of the Secretary, Dr. John R. Pieklik, an internist, and Dr. Robert M. Ritter, a psychiatrist. Received also were letters from Drs. Howard D. Clark and Vince Baucum, both general practitioners who had treated Mrs. Jones on a regular basis, and a report from Dr. Bernard S. Patrick, a neurological surgeon who performed Mrs. Jones' operation in November, 1979, and who was responsible for her hospitalization in January, 1981.

Dr. Patrick indicated that when he examined Mrs. Jones on July 25, 1980, she was still complaining of left back and leg pain, but in spite of these complaints, objectively she "clearly" appeared to be improving. Following Mrs. Jones' hospitalization in 1981, Patrick conducted a lumbar myelogram as well as various x-rays of the lumbar spine which showed no significant abnormalities. After a careful review of Mrs. Jones' medical history and current laboratory results, Dr. Patrick concluded that he had "serious doubts" that he could find "sufficient evidence to justify a disability

status for Mrs. Jones." At the same time, he concluded that she did have "some back difficulty that makes her life less than ideal."

Dr. Patrick additionally consulted with Dr. Tom Turner, a board-certified orthopedic surgeon, who further investigated Mrs. Jones' complaints by performing additional medical tests (tomagrams of L–5, pars interarticularis) which were normal. As a result of these tests and a study of Dr. Patrick's evaluation, Dr. Turner concluded that Mrs. Jones "probably" did not have a serious organic problem with her back. His opinion was that Mrs. Jones was capable of sedentary work involving standing, walking, and moving about, but excluding frequent bending and heavy lifting.

Dr. Robert M. Ritter, a board-certified psychiatrist and neurologist, performed a consultive examination of Mrs. Jones on July 16, 1981. Dr. Ritter noted that Mrs. Jones continued to complain of pain, but appeared to be "capable of gainful employment." He concluded that she suffered from multiple psychophysical reaction.

Dr. John Pieklik, a board-certified internist, examined Mrs. Jones on July 15, 1981. He concluded that she was suffering from "moderately disabling low back pain and recurrent ventral hernia." Dr. Pieklik completed a Residual Functional Capacity Evaluation which indicated that Mrs. Jones was capable of performing sedentary work.

Dr. Howard D. Clark, a board-certified family practitioner, submitted a letter dated September 22, 1980, indicating that Mrs. Jones was "totally and permanently disabled because of post-operative lumbar disc disease and recurrent, post-operative ventral hernia." Dr. Vance Baucum, also a general practitioner, examined Mrs. Jones

on June 12, 1981, and indicated that Mrs. Jones' prognosis was "poor" due to a recurrent abdominal wall hernia, and also that her ability to work was restricted due to pain. Dr. L.A. Bible stated in letters dated September 22, 1980 and May 1, 1981, that plaintiff's "main problem is that no one will hire her because of her medical history." Dr. Michael A. Douglas, a general surgeon, concluded in a letter of September 10, 1980, that Mrs. Jones was suffering from "low back pain syndrome without significant neurological deficit."

After consideration of the entire record, the administrative law judge found that Mrs. Jones' "impairments, together with accompanying pain" have prevented her from returning to her past jobs, but have not prevented her from "performing sedentary work on a sustained basis, where she would be required to lift a maximum of ten pounds, and occasionally stand and/or walk." [1] While the ALJ recognized that Mrs. Jones had undergone two surgeries to her lower back and has significant limitation of movement in her lumbar spine which would undoubtedly cause her to experience discomfort, he concluded that only minimal neurological deficits existed. Such deficiencies would not prevent her from engaging in sedentary work.[2] The judge also found that while Mrs. Jones testified as having anxiety, there was no evidence of inappropriate behavior, thought disorder, or any other indicia of a severe psychiatric impairment. Nor was there medical evidence of any heart impairment to substantiate her complaints of recurrent chest pain.

While voicing sympathy for her recurrent hernia and for her need to care for her mentally retarded son, the ALJ concluded

---

1. Sedentary work is defined in the Social Security Regulations as follows:

 (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if

walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567 (1982).

2. The administrative law judge found that Mrs. Jones' medically determinable impairments were status post-lumbar disc surgery on two separate occasions, status post hernia repair on several occasions, together with a present ventral hernia and multiple psycho-physiological reaction.

that the medical evidence did not indicate "objective clinical findings indicating a musculoskeletal or neurological impairment of such severity as to account for the symptoms testified to by Mrs. Jones." The level of her current disability, combined with Mrs. Jones' vocational characteristics, directed a finding of not disabled within § 423(d)(1)(A) of the Social Security Act. The ALJ's decision was upheld by the Social Security Appeals Council. Mrs. Jones then filed a complaint in federal district court, pursuant to 42 U.S.C. § 405(g). Finding substantial evidence in the record to support the conclusion of the Appeals Council, the district court granted the Secretary's motion for summary judgment. This appeal follows.

## II.

Mrs. Jones first argues that the administrative law judge's finding that her impairments did not preclude substantial gainful employment is not supported by the evidence. Specifically, she argues that the administrative law judge erred in not giving conclusive weight to the opinions of two of her attending physicians that she was completely disabled, and that the administrative law judge failed adequately to consider her subjective complaints of pain.

An individual claiming disability insurance benefits must show that he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The existence of such a disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proving disability under the Act rests on the claimant. 42 U.S.C. § 423(d)(3); *Rodriquez v. Schweiker,* 640 F.2d 682, 685 (5th Cir.1981); *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.),

*cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Fortenberry v. Harris,* 612 F.2d 947, 949 (5th Cir.1980). A claimant shall be determined to be under a disability

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A).[3]

If a claimant proves that he or she is no longer able to work in the prior job, the burden then shifts to the Secretary to show that there is some other type of substantial gainful activity that the claimant can perform. *Western v. Harris,* 633 F.2d 1204, 1207 (5th Cir.1981); *White v. Harris,* 605 F.2d 867, 869 (5th Cir.1979); *Anderson v. Schweiker,* 651 F.2d 306, 309 (5th Cir.1981).

Review by this Court is limited to determining whether there is substantial evidence in the record as a whole to support the Secretary's decision. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1979); *Rodriguez v. Schweiker, supra,* 640 F.2d at 685. We may neither reweigh the evidence nor substitute our judgment for that of the Secretary. *Anderson v. Schweiker, supra,* 651 F.2d at 308. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra,* 402 U.S. at 401, 91 S.Ct. at 1427. The burden of proof on the claimant is heavy. As pointed out by this Court in *Laffoon v. Califano,* 558 F.2d 253, 256 n. 6, (5th Cir.1977), the showing required of the claimant is "so stringent that it borders on being unrealistic." (*quot-*

---

**3.** We note that the Secretary is not required to prove the existence of actual opportunities in Mrs. Jones' immediate location. The Secretary need only prove substantial gainful employ-

ment exists as such in the national economy. *Demandre v. Califano, supra,* 591 F.2d at 1090; *Anderson v. Schweiker,* 651 F.2d 306, 310 n. 4 (5th Cir.1981).

*ing Williams v. Finch,* 440 F.2d 613, 615 (5th Cir.1971)).

█ Here, Mrs. Jones argues that the administrative law judge did not have a right to assign greater weight to the reports of Drs. Patrick, Turner, and Pieklik, each of whom recognized that Mrs. Jones suffered from moderately disabling back pain but who concluded that she was nonetheless capable of sedentary work, than to the opinions of Drs. Baucum and Clark who concluded that she was disabled. It is within the administrative law judge's discretion to resolve the issue of conflicting evidence. *Payne v. Weinberger,* 480 F.2d 1006, 1007 (5th Cir.1973); *Anderson v. Schweiker, supra,* 651 F.2d at 308. In addition, it is clear that the weight to be given a physician's statement is dependent upon the extent to which it is supported by specific clinical findings. *See* 20 C.F.R. § 404.1513 (1982). The letters submitted by Drs. Clark and Baucum did conclude that she was "totally and permanently disabled," and that her ability to work was "restricted due to pain." These conclusions, however, comprised each physicians' entire report. There was a complete absence of any objective findings in support of either opinion. The conclusions reached by the other examining physicians that Mrs. Jones was capable of sedentary work, however, were based on extensive and detailed clinical analyses.

We considered a virtually identical claim in *Laffoon v. Califano,* 558 F.2d 253 (5th Cir.1977). In that case, the claimant also asserted that the ALJ had given improper preference to opinions of physicians who examined her at his request over the opinions of doctors who had treated her for several years. The only objective medical evidence submitted by claimant to establish her disability consisted of two letters. By comparison, the findings of the psychologist and orthopedic surgeon who examined claimant at the behest of the administrative law judge were based on detailed analyses

of test data. In rejecting her appeal, we noted that medical reports from physicians which are unsupported by any clinical or laboratory diagnostic data or findings may be properly discounted by the Secretary in his ruling. We concluded that "[c]onflicts in the evidence, *including those arising in medical opinions,* are to be resolved not by the courts, but by the Secretary." *Id.* at 254–55. (emphasis added)

At best, the letters from Drs. Baucum and Clark presented conflicting evidence for resolution by the Secretary. His reliance on the conclusions of Drs. Turner, Patrick and Pieklik was entirely proper.

### III.

Mrs. Jones next complains that the administrative law judge ignored her subjective complaints of severe and disabling pain.

█ Because pain alone may support a finding of disability,[4] the Secretary "*must consider subjective evidence of pain as testified to by the claimant.*" *Scharlow v. Schweiker,* 655 F.2d 645, 648 (5th Cir.1981) (emphasis in original). Here, it is clear that the administrative law judge carefully weighed Mrs. Jones' allegations of pain. In fact, in his opinion, the ALJ found that Mrs. Jones' impairments, "*together with accompanying pain and discomforts,* have prevented her from returning to her past jobs ... but have not ... prevented her from performing sedentary work on a sustained basis." He specifically stated that in reaching his conclusions, he had "not disregarded the claimant's allegations of pain and discomfort which her impairments no doubt caused her to experience." Rather, the ALJ concluded that the evidence showed that her pain was not so severe as to prevent her from working at a sedentary job.

█ It is within the discretion of the administrative law judge to determine the

---

4. We note that the mere existence of pain is not an automatic ground for obtaining disability benefits. *Fortenberry v. Harris, supra,* 612 F.2d at 950. This Court has never taken the position that subjective evidence must take precedence over conflicting objective medical evidence, nor that all pain is disabling. *Gaultney v. Weinberger,* 505 F.2d 943, 945 (5th Cir. 1974); *Laffoon v. Califano, supra,* 558 F.2d at 255.

disabling nature of pain. *Gaultney v. Weinberger, supra,* 505 F.2d 943, 945 (5th Cir. 1974); *Laffoon v. Califano, supra,* 558 F.2d at 255. A factual determination of whether the claimant is able to work despite some pain will be upheld if supported by substantial evidence. *Fortenberry v. Harris, supra,* 612 F.2d at 950; *Newborn v. Harris,* 602 F.2d 105, 107 (5th Cir.1979). The ALJ concluded that Mrs. Jones had "considerably exaggerated her symptomatology." He found that "the medical evidence simply does not show objective clinical findings indicating a musculoskeletal or neurological impairment of such severity" as to support her contention of constant, debilitating pain. The ALJ added that Mrs. Jones was not receiving regular medical care, was not taking an inordinate amount of prescribed pain medications, and that her demeanor at trial was not consistent with that of a person suffering from chronic pain. His conclusion that the pain Mrs. Jones suffered would not prevent her from engaging in sedentary work was amply supported by the evidence.

## IV.

Mrs. Jones finally contends that the administrative law judge erred in not obtaining vocational expert testimony to support his burden of showing that there was available some other kind of substantial gainful employment which she would be able to perform.

 Although the Secretary may decide to use a vocational expert to establish the existence of work in the national economy that the applicant is capable of performing, "it is by no means necessary." *Salinas v. Schweiker,* 662 F.2d 345, 348 (5th Cir. 1981). Whether a vocational expert will be called in the particular case is clearly within the discretion of the Secretary. *Frady v. Harris,* 646 F.2d 143, 144 (4th Cir.1981). In addition, the regulations explicitly empower the Secretary to use his discretion in employing the services of a vocational expert. *See* 20 C.F.R. § 404.1566(e) (1982).[5]

 Here, the administrative law judge applied his findings that Mrs. Jones could perform sedentary work, was 47 years old, and had finished the eighth grade to Rule 201.18, Table 1 of Appendix 2 in the medical-vocational guidelines and concluded that she was not disabled. When findings of fact are made as to the claimant's age, education, transferability of skills, work experience, and residual functional capacity, and these coincide with the criteria of a rule in the vocational regulations, that rule "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Appendix 2, § 200.00(a) (1982). Because the ALJ had made these explicit findings, the existence in the economy of jobs that a person with Mrs. Jones' qualifications could fill could be established by administrative notice. 20 C.F.R. § 416.969 (1982).[6] *Salinas v. Schweiker, supra,* 662 F.2d at 348.

Here there was ample evidence in the record to indicate that Mrs. Jones had the residual capacity to perform sedentary work. These findings could be compared with the vocational regulations, and the use

---

**5.** 20 C.F.R. § 404.1566(e) (1982) provides:

(e) Use of vocational experts and other specialists:

If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. *We will decide whether to use a vocational expert or other specialist.* (emphasis added).

**6.** This regulation provides as follows:

The *Dictionary of Occupational Titles* includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. Appendix 2 provides rules using this data reflecting major functional and vocational patterns. We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. The rules in Appendix 2 do not cover all possible variations of factors.... *However, if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled.* 20 C.F.R. § 416.969 (emphasis added).

by the Secretary of these regulations in lieu of vocational expert testimony was proper.

## CONCLUSION

Based upon the record as a whole, including the testimony and the medical evidence offered at the hearing, it is clear that there was more than substantial evidence to support the decision of the administrative law judge. In addition, the failure to call a vocational expert to testify as to available jobs in the national economy did not constitute error. Accordingly, the decision of the district court upholding the decision of the Secretary to disallow Mrs. Jones' application for total disability insurance benefits is

AFFIRMED.