**Johnson P. CURTIS**

v.

**Margaret HECKLER, Secretary of Health and Human Services.**

No. B–83–281–CA.

United States District Court, E.D. Texas, Beaumont Division.

Feb. 16, 1984.

Robert C. Grossheim, Dryden, Watson, Grossheim & Jamail, Beaumont, Tex., for plaintiff.

Robert J. Wortham, U.S. Atty., Beaumont, Tex., William J. Cornelius, Jr., First Asst. U.S. Atty., Tyler, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

The plaintiff, Johnson P. Curtis, filed this suit under Section 205(g) of the Social Security Act, 42 U.S.C. sec. 405(g) (1976), seeking judicial review of a final decision of the Secretary of Health and Human Services denying his claim for disability benefits under the Act. Both parties have moved for summary judgment. Because this Court believes the Administrative Law Judge did not correctly consider or develop the evidence, the case is remanded.

Curtis is a 61-year old male with a formal 10th grade education. He did attend a business college for a short period; and the vocational expert who testified at plaintiff's disability hearing believed that Curtis had the equivalent of a high school education. Curtis worked for most of his life as an auto parts salesman, at one time owning his own store. For a short period after 1980 he worked as a salesman of industrial cleaning machines and equipment. Curtis ceased work on July 25th, 1981, claiming he was disabled because of heart problems.

These heart problems had been of long duration. In 1970, he underwent single coronary bypass surgery. The operation was successful, but for the next nine years Curtis suffered recurrent attacks of angina pain, which increased in severity as the years passed. Finally, on August 6, 1981, shortly after he quit working, Curtis underwent triple bypass surgery. Once again the operation was successful, and plaintiff was discharged from the hospital eight days later.

Several doctors examined Curtis after his 1981 surgery. Some of them believed Curtis was disabled. Dr. Ross Kyger, the doctor who performed Curtis' 1981 heart surgery, stated five months after the surgery that the plaintiff was "disabled from any sort (of) activity requiring exertion." Dr. Auldine Hammond, an osteopathis surgeon, examined Curtis in March, 1982, regarding a whiplash injury plaintiff had suffered in a car accident subsequent to the triple bypass. Hammond stated after the examination that Curtis was "not physically able to continue working." Hammond explained this statement by saying "(h)is capacity for lifting is very limited, and exertion and stress cause angina."

Other private doctors also examined Curtis. While they did not directly state so, the ALJ believed their findings supported his belief that the plaintiff was not disabled. Dr. John Lancaster saw plaintiff at two month intervals after Curtis' 1981 sur-

gery. During this time period, Lancaster reported that plaintiff was suffering chest pain, which might have been angina. Lancaster last examined the plaintiff in early 1982. At that time the Doctor reported that Curtis had "no discomfort with exertion." He also found, however, that Curtis was "unable to do any lifting because he gets weak." On balance, Lancaster found plaintiff's physical exam "unremarkable." Dr. Baya Huynh examined Curtis in December, 1981; apparently the only time Huynh saw Curtis. This doctor found the plaintiff still suffering from heart disease and suffering chest pain. Huynh characterized Curtis' status as basically post-operative.

Staff reviewing physicians of the Social Security Administration clearly supported the ALJ's conclusion that Curtis was not disabled. These doctors made an initial determination of Curtis' condition in January, 1982. They stated that plaintiff's operation had been of benefit to him, and that despite his heart problems he still possessed the capability of medium work. Yet two months later the doctors changed their minds and limited Curtis to a light level of work. The ALJ accepted the later finding.

In sum, there seems to be confusion surrounding the true state of Curtis' health. His treating physicians state he is disabled, yet do not explain their statements. Other doctors who examined Curtis report his exertional capabilities are limited, but do not state how. Government doctors initially state Curtis can do a medium level of work, but later downgraded his work status. Therefore, the question becomes: given this medical confusion, can it be said that the ALJ had substantial evidence to justify his finding of no disability? Given Curtis' age, his long-term heart disease, and the seriousness of triple bypass surgery, this Court holds that he did not.

▪ In remanding, this Court must state that it is well aware of the circumstances surrounding the 1980 amendment of Section 205(g) of the Social Security Act. Congress, concerned about a flood of unjustified federal court-ordered remands, re-

placed the "good cause" standard for remand with a stricter standard that requires not only good cause, but the probability that new and material evidence will be presented. 42 U.S.C. § 405(g) (1980). Nevertheless, this provision is not nearly as restrictive as a literal reading of it might suggest. *Dorsey v. Heckler,* 702 F.2d 597, 605 (5th Cir.1983). The Social Security Act is to be "broadly construed and liberally applied." *Williams v. Califano,* 590 F.2d 1332, 1334 (5th Cir.1979). Considerations of fairness and efficiency may enter into a decision to remand a case to the Secretary. *Dorsey,* 702 F.2d at 605. *See also Ferguson v. Schweicker,* 641 F.2d 243 (5th Cir. 1981). Though this Court cannot and will not re-weigh the evidence, neither can it "abdicate (its) traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of the decision reached." *Williams v. Finch,* 440 F.2d 613, 615 (5th Cir.1971).

▪ In the instant case, the ALJ found that the doctors who reported Curtis disabled made their comments without delineating any concrete reasons for stating so. Therefore, the ALJ labeled the statements as "conclusory" and further stated that "it was extremely doubtful" that the doctors reporting Curtis to be disabled had "any vocational expertise or are knowledgeable as to the criteria for 'disability' under Social Security standards." The ALJ was correct in observing that what an ordinary doctor means by "disability" may not rise to the level required for disability under the Social Security Act. See *Harmon v. Finch,* 460 F.2d 1229 (9th Cir.1972) *cert. denied* 409 U.S. 1063, 93 S.Ct. 571, 34 L.Ed.2d 515 (1973). See also 20 C.F.R. 1527 (1983).

A similar situation can be found in the recent Fifth Circuit opinion in *Jones v. Heckler,* 702 F.2d 616 (5th Cir.1983). In *Jones,* the claimant alleged that the ALJ had given more weight to the reports of physicians who stated claimant was not disabled than to the evidence submitted by doctors claiming she was. The *Jones'* Court held that the only evidence sub-

mitted favoring disability had been letters from two doctors. That Court noted the letters contained "a complete absence of objective findings" in the letters. Thus, the letters stated mere conclusions, while the reports of the doctors finding no disability contained extensive analyses. *Id.* at 621. At best, the Court said, the letters presented "conflicting evidence for resolution by the Secretary," and had been properly discounted. *Id.*

Yet *Jones* can be distinguished here. In that case the evidence asserting no disability was clear, strong and free from the taint of bias. In the instant case the strongest proponents of a non-disability finding were the Administration's staff reviewing physicians. Even they backed down from a finding of capability to do medium work to a later finding that claimant could only do light work. Other physicians were simply ambiguous. Dr. Kyger, at least, submitted a report with his letter concluding Curtis was disabled. Finally, the ALJ made no ruling at the hearing that the record be held open so that more evidence could be presented after the hearing, as has been done many times before.

█ Thus, the evidence here differs in both nature and extent from the evidence in *Jones*. This Court recognizes that conflicts in medical evidence are to be resolved by the Secretary. *Laffoon v. Califano,* 558 F.2d 253 (5th Cir.1977). There must be, however, enough evidence in the record for the conflict to be resolved, rather than simply ignored. When it is clear that material evidence was either not before the Secretary, or was not explicitly considered by him, although necessary to a just determination of a claimant's application, the matter should be remanded to the Secretary for the taking of that additional evidence. *Essig v. Secretary of Health and Human Services,* 531 F.Supp. 55, 57 (E.D.N.Y.1981) *citing Parker v. Harris,* 626 F.2d 225 (2d Cir.1980). Otherwise, a "skewed view of the evidence" will exist "making it impossible to conclude that a decision is supported by substantial evidence." *Essig,* 531 F.Supp. at 57.

█ This Court finds one other factor justifying remand. Curtis was not represented by counsel at his disability hearing. In itself this is not automatic cause for vacating the decision of the ALJ. For that, clear prejudice or unfairness must have occurred because of the absence of counsel. *Cross v. Finch,* 427 F.2d 406, 409 (5th Cir.1970). Here an examination of the transcript reveals that many medical questions were asked of Curtis. Moreover, Curtis asked no questions of the vocational expert who testified, nor did it seem that the importance of his doing so was emphasized.[1] In this context, This Court believes prejudice did accrue, similar to the prejudice found in *Taylor v. Harris,* 505 F.Supp. 153 (E.D.Tex.1981) (Fisher, J.).

Since this Court is convinced that Curtis' claim received only a cursory review, it cannot in good conscience affirm the Secretary in this matter. It is, therefore

ORDERED, ADJUDGED, AND DECREED that this cause is hereby REMANDED to the Secretary for further hearing in conformance with this memorandum opinion.

---

1. The Court must note that it is dissatisfied with the efforts of the government's attorneys in this case. These cases are usually dealt with by a district court on the basis of cross-motions for summary judgment. Therefore, the briefs supporting these motions have an unusual importance. In the instant case, the government's brief refers to plaintiff's "quadruple" bypass surgery. Defendant's brief at 5. A thorough look at the record reveals plaintiff underwent triple bypass surgery. The government's brief includes a discussion of why the ALJ did not need to call a vocational expert at the hearing. Defendant's brief at 12–13. The record is quite clear that a vocational expert did testify. While not a factor in the decision, these inaccuracies illustrate the sort of cursory review the plaintiff's case received.