### Robert L. EAVES

v.

### SECRETARY OF HEALTH AND HUMAN SERVICES.

No. 1:93–CV–305.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 16, 1995.

J. Kevin Dutton, Beaumont, TX, for plaintiff.

Steven M. Mason, Asst. U.S. Atty., for defendant.

## MEMORANDUM ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SCHELL, Chief Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services denying plaintiff's applications for disability insurance benefits.

The court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, at Beaumont, Texas, for consideration pursuant to applicable laws and orders of this court. The court has received and considered the Report of the United States Magistrate Judge filed pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

### I. Introduction

Robert L. Eaves (plaintiff) brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's applications for disability insurance benefits and supplemental security income benefits. Plaintiff claims disability due to heart ailments, Crohn's disease, and adhesive capsulitis of the shoulders. He now contests the Secretary's decision by asserting that the Administrative Law Judge ("ALJ") erred in finding that plaintiff was not disabled.

This case has been referred to the undersigned United States magistrate judge for review, hearing if deemed necessary, and submission of a report with recommended findings and conclusions. See 28 U.S.C. § 636(b)(1)(B); General Order 88–4 (Sept. 15, 1988). For the reasons discussed below, the Secretary's decision should be affirmed.

### A. Judicial Review

■ The limited role of the court upon judicial review is to determine whether the Secretary applied the proper standards in reaching her decision, and whether the Secretary's decision is supported by substantial evidence. *Lovelace v. Bowen,* 813 F.2d 55, 57 (5th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Marcello v. Bowen,* 803 F.2d 851 (5th Cir.1986) (*citing Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)).

A determination as to whether there is substantial evidence in the entire record to support the fact findings or decision of the Secretary, as the trier of facts, does not involve reweighing the evidence, nor trying the issues de novo, nor substituting the judgment of the court for that of the Secretary. *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir. 1987); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir.1987); *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986). Rather, this

court must "scrutinize the record in its entirety to determine whether substantial evidence supports the Secretary's findings." *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ The elements of proof to be weighed in determining whether substantial evidence exists include: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (*citing DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)).

## B. Eligibility for Disability Insurance Benefits

■ To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Those claiming disability insurance benefits under the Social Security Act have the burden of proving their disability. *DeMandre v. Califano,* 591 F.2d 1088 (5th Cir.1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979); *Rhynes v. Califano,* 586 F.2d 388 (5th Cir.1978); *Kirkland v. Weinberger,* 480 F.2d 46 (5th Cir.1973), *cert. denied,* 414 U.S. 913, 94 S.Ct. 255, 38 L.Ed.2d 155 (1973).

■ Establishment of a disability is a two-step process. First, plaintiffs must prove that they suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Physical or mental impairment means "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable, clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Second, plaintiffs must prove that an impairment renders them unable to engage either in the work they previously performed or other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

■ Consequently, proof of the existence of a disease or an impairment, by itself, does not establish a disability. The plaintiff must also show preclusion from engaging in any substantial gainful employment. *Herridge v. Richardson,* 464 F.2d 198 (5th Cir. 1972); *Ratliff v. Richardson,* 445 F.2d 440 (5th Cir.1971). Title 42 U.S.C. § 423(d)(2) provides in part that one's physical or mental impairment must be of such severity that one is not only unable to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area of habitation, a specified job vacancy exists, or if application would result in employment. The burden is so stringent that it has been described as "bordering on the unrealistic." *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir.1981).

## C. Exhaustion of Administrative Remedies

### (1) General Requirements

The administrative steps which a social security disability claimant must exhaust before bringing suit in federal district court are summarized in *Harper v. Bowen,* 813 F.2d 737, 739 (5th Cir.1987) as follows:

> The Secretary has established a regulatory system for administrative review, leading up to a final decision that may then be appealed to the district court. The process is begun when an individual files a claim with the SSA for benefits. This claim is either granted or denied, creating an initial determination. *See* 20 C.F.R. §§ 416.1404 to 416.1405. Next, the claimant must file for and receive a request for reconsideration. *See generally* 20 C.F.R. §§ 416.1407 to 416.1422. The Secretary reviews the claim again, and then issues a

reconsidered determination. 20 C.F.R. § 416.1420. After obtaining the initial and reconsidered determinations, a dissatisfied claimant may file for an evidentiary hearing before an ALJ. *See generally* 20 C.F.R. §§ 416.1429 to 416.1468. If the claimant still objects to the decision, he or she may appeal the ALJ's determination to the Appeals Council. *See generally* 20 C.F.R. §§ 416.1467 to 416.1483. The decision rendered at the initial, reconsideration, and ALJ stage is binding on the claimant unless further administrative review with the Appeals Council is sought within 60 days. These four steps exhaust the claimant's administrative remedies.

Following this exhaustion of the administrative remedies with a final decision being rendered by the Appeals Council, judicial review may be sought in the district court. 20 C.F.R. §§ 16.1400 and 416.1481. *See also Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201 (1977) ("Section 205(g) clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.' "). Although a decision rendered on a claim at each stage of the proceedings is final and binding on the parties unless they proceed to the next step in the process, the regulatory scheme provides that a "final decision" allowing judicial appeal is rendered by the Secretary for the purposes of section 205(g) of the Social Security Act when the Appeals Council either reviews or denies review of the ALJ's decision. *See* 20 C.F.R. §§ 416.1405, 416.1421, 416.1455, 416.1481. After such a "final decision," the claimant has 60 days in which to file for judicial review of the decision or else it is binding.

20 C.F.R. § 416.1481.

No issue of failure to exhaust administrative remedies having been raised by defendant, and none being apparent from a review of the entire record, plaintiff has standing to pursue this action for judicial review.

**(2) Proceedings in This Case**

Plaintiff filed his application for disability benefits on July 10, 1989. He alleged disability since December 26, 1986. Plaintiff filed for supplemental security income benefits on June 26, 1989. (Tr. 173). Plaintiff's applications were denied administratively.

Dissatisfied with those determinations, plaintiff requested that his claim be considered de novo by an ALJ of the Social Security Administration. Plaintiff's request was granted, and on August 14, 1990, a full hearing was conducted. Plaintiff appeared with his attorney and testified with two witnesses and a vocational expert. The ALJ issued a recommended decision on December 12, 1990. The ALJ found plaintiff was not disabled under the Social Security Act, and recommended denial of his claim for social security benefits. (Tr. 32–41).

Plaintiff thereafter sought review of the recommended decision before the Appeals Council. The Appeals Council granted his request for review on August 19, 1991. The case was remanded for additional medical evidence regarding plaintiff's shoulder condition and supplemental vocational testimony pertaining to that ailment. (Tr. 24–26).

On July 21, 1992, an ALJ conducted a supplemental hearing. On December 22, 1992, the ALJ recommended plaintiff's request for benefits be denied. (Tr. 9–19). The Appeals Council denied plaintiff's request for review on May 12, 1993. Therefore, the decision of the ALJ became the final decision of the Secretary, of which plaintiff seeks judicial review.

## II. Factual Background

### A. Age, Education, and Work Experience

Plaintiff was fifty-three years of age at the time of the second hearing. (Tr. 99). He has a tenth grade education. (Tr. 53). He is five feet and ten inches tall and weighs between 130 and 140 pounds. (Tr. 52). His work experience includes employment as a journeyman carpenter, oil field worker, and carpenter in the construction industry. (Tr. 100–04). Plaintiff testified he last worked in 1989. (Tr. 103–04).

## B. Medical Evidence

Plaintiff was diagnosed with ileitis [1] in December, 1986. On December 28, 1986, pursuant to exploratory surgery, Dr. D.L. Horton, M.D., of St. Elizabeth Hospital in Beaumont, Texas, performed a resection of the ileum and an appendectomy. (Tr. 319). Crohn's disease [2] was diagnosed in 1986. (Tr. 229).

Plaintiff began experiencing four to five bowel movements a day, one to two of these being diarrhetic, in September of 1987. In May, 1988, plaintiff was admitted to St. Elizabeth Hospital emergency room with complaints of intermittent, moderate to severe lower abdominal pain. (Tr. 236). Dr. Greg Farrell, M.D., of the University of Texas Medical Branch Hospital ("UTMB") in Galveston, Texas, performed an esophagogastroduodenoscopy on November 30, 1987. This test revealed normal results. (Tr. 241). On December 21, 1987, plaintiff underwent a colonoscopy at UTMB. Normal results were returned. (Tr. 316). Plaintiff was prescribed Tagamet for Crohn's disease and began treatment of this ailment with Dr. Joseph Holland, M.D., of St. Elizabeth Hospital. (Tr. 314).

On May 15, 1989, plaintiff was admitted to Buna Medical Center with substernal chest pains. (Tr. 249). Plaintiff later was admitted to St. Elizabeth Hospital with severe chest pain. An EKG and enzyme report showed plaintiff had undergone a heart attack. Dr. Alfred Brady, M.D., of St. Elizabeth Hospital, diagnosed plaintiff as having suffered an acute myocardial infarction. (Tr. 248). Catheterization revealed stenosis of multiple vessel including primal and distal stenosis of the left anterior descending artery. On June 19, 1989, Dr. Brady performed a coronary arteriogram, left heart catheterization, and a left ventriculogram. (Tr. 284). At this time, Dr. Brady also noted a lesion on plaintiff's lung indicated chronic interstitial pulmonary disease. (Tr. 283).

Plaintiff's discharge summary reflects a history of Crohn's disease and peptic ulcers, ischemic heart disease, and chronic lung disease. (Tr. 248).

In January of 1990, plaintiff returned to St. Elizabeth Hospital with unstable angina pain. (Tr. 458). According to Dr. E.R. Leggett, M.D., plaintiff's Crohn's disease appeared under control at that time. (Tr. 225). In July of the same year, plaintiff went to the hospital with new angina pains. Catheterization revealed multiple stenosis. On July 6, 1990, Dr. Stephen LaMendola, M.D., of the Thoracic and Cardiovascular Surgical Associates in Beaumont, performed a coronary bypass operation at St. Elizabeth. (Tr. 484). One month after surgery, Dr. LaMendola reported plaintiff's convalescence was normal. (Tr. 357).

Also in July of 1990, an esophagogastroduodenoscopy, performed by Dr. Holland, disclosed a small hiatal hernia but no other abnormalities in plaintiff's esophagus, stomach, or duodenum. (Tr. 359). Dr. Brady further diagnosed plaintiff as suffering from chronic interstitial pulmonary disease in its early stages. (Tr. 430).

In October of 1990, claimant commenced treatment for left shoulder pain with Dr. Brian Aquino, of Deep East Texas Regional Health Center. (Tr. 506). Dr. Aquino diagnosed the pain as originating from subacromial bursitis. (Tr. 506). Dr. Lynn Pearson, M.D., of Newton County Health Clinic, assumed plaintiff's care in 1990. (Tr. 470). Dr. Pearson diagnosed plaintiff as having adhesive capsulitis,[3] or frozen shoulder, on May 28, 1991. (Tr. 501). Numbness in the left third and fourth fingers was reported. (Tr. 511). Lifting and overhead activities were precluded on March 3, 1992. The Orthopedic Clinic of UTMB noted that plaintiff had received clertone/ridocaine injections for relief from his shoulder pain. (Tr. 517).

---

**1.** An inflammation of the distal portion of the small intestine.

**2.** A chronic inflammatory disease involving any part of the gastrointestinal tract but commonly involving the terminal ileum (distal portion of the small intestine). Crohn's disease produces extensive scarring of the bowel walls and is characterized by chronic heartburn, loss of weight, diarrhea, and intestinal discomfort.

**3.** An inflammation between the joint capsule and the cartilage of the shoulder, characterized by painful shoulder of gradual onset with increasing pain, stiffness, and limitation of motion.

Dr. D. Heath, M.D., of UTMB Orthopaedic Clinic, examined plaintiff's shoulders on June 22, 1992. Dr. Heath reported plaintiff could do "table level work that does not require lifting more than five pounds." (Tr. 552). On July 16, 1992, Phyllis Watson, P.A.C., of the Deep East Texas Regional Health Center, noted that her examination of plaintiff indicated he suffered from chronic pain. (Tr. 570).

In a statement issued on January 20, 1993, Dr. Pearson noted plaintiff was permanently limited by his shoulder ailment. Dr. Pearson stated plaintiff cannot lift any object above waist level. (Tr. 570).

## C. Plaintiff's Subjective Testimony

Plaintiff testified at his supplemental hearing that he has pain in both shoulders. (Tr. 110). He alleged he cannot work because he has not been able to hold up his arms for the last year and a half. (Tr. 108). He reported that he can only walk a hundred yards before he becomes exhausted, and can stand for thirty to forty minutes due to knee and back pain, and can sit in fifteen minute increments only. (Tr. 108). He stated he could not lift a gallon of milk to put in the refrigerator and can only lift two to three pounds. (Tr. 109). In addition, plaintiff cannot perform common household tasks, such as mowing the lawn.

Plaintiff presented testimony regarding his worsening bouts with Crohn's disease. Plaintiff testified he has frequent bouts of diarrhea, which had intensified in the two weeks prior to the hearing. (Tr. 115). If he deviates from a strict diet in any way, he may have to visit the restroom in urgency six to ten times a day. (Tr. 156).

Plaintiff testified he cannot sleep because he cannot rest in any position without pain. (Tr. 148). He cannot grab anything due to pain in his joints. Furthermore, he finds standing in the shower and shampooing his hair to be extraordinarily painful. (Tr. 150). He cannot watch television because he cannot sit without pain.

Plaintiff testified that when his back pain worsens, he takes a prescribed Tylenol IV. Usually he will take this medication prior to bedtime, but two or three times a week he takes one in the daytime to quell his pain. He then lies down for approximately fifteen minutes to an hour and remains drowsy for three to four hours. (Tr. 146–47).

## D. The Medical Expert's Testimony

ALJ Truett M. Honeycutt secured a non-examining medical expert ("ME"), Dr. Harry King, M.D., to testify at plaintiff's second hearing. Dr. King reviewed the medical exhibits presented at the hearing. He stated he found little documented evidence of Crohn's disease. Further, the ME stated in January of 1990, plaintiff had normal heart wall motion and normal left reticular exsection fraction. (Tr. 122). He noted plaintiff was able to complete nine minutes on a treadmill in February of 1990 without chest pains or EKG changes. The ME noted plaintiff had received more than one diagnosis regarding his shoulder pain and there was no medical documentation of severe lung disease. (Tr. 127).

The ME suggested plaintiff was limited in motion and would not be able to climb ladders or take a job which would require him to steady himself in his weakened condition. (Tr. 134). However, he noted that the medical records did not reflect plaintiff could not do table work or lift more than five pounds. While the ME stated it was relatively clear plaintiff could not do medium lifting, he stated plaintiff had a full range of motion for light lifting and would be able to perform sedentary work without incident. (Tr. 136).

## E. The Vocational Expert's Testimony

Wayne Alfred, M.A., a certified rehabilitation counselor and professional counselor, testified as a vocational expert ("VE"). Mr. Alfred qualified plaintiff's prior work experience as a carpenter as very skilled, with a wide range of bending, stooping, and lifting required. The VE concluded that plaintiff could not perform his prior work, that is medium to heavy lifting with a skilled or semi-skilled level of training. A person of plaintiff's age, education, and nontransferable work skills, with light residual functioning capacity and restrictions as to height and weight, would have to resort to unskilled

labor as the only avenue of employment available.

The VE suggested that a person who was unable to lift more than ten pounds frequently and fifteen pounds occasionally would be limited to various assembly worker positions or employment as electrical wire worker or eyeglass polisher. (Tr. 137). There are 90,000 Texans employed in these positions and one million nationwide. (Tr. 138). Decreasing the ability to lift items to five pounds and under resulted in performance of work as an unskilled cashier, such as in a parking lot. This caused the existence of jobs to decrease to 32,000 Texans and 500,000 nationwide. (Tr. 142).

### III. The Secretary's Decision

#### A. Sequential Evaluation Process

The Secretary's regulations require a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520 (1986). *First:* Is the plaintiff currently engaging in substantial gainful activity? If so, a finding of nondisability is required to be made and the inquiry ends. *Second:* Does the plaintiff have a severe impairment or combination of impairments? If not, a finding of nondisability is required and the inquiry ends. *Third:* Does the severe impairment meet or equal those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (1986)? If so, disability is presumed and benefits are awarded. *Fourth:* Does the impairment prevent the performance of the plaintiff's regular previous employment? If it does, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Secretary. *Chaparro,* 815 F.2d at 1010. *Fifth:* Is there work in the national economy which the plaintiff can perform? If the Secretary shows that the plaintiff can perform alternative employment, the burden then shifts back to the claimant to show he or she cannot perform the alternative labor. *Id.;*

*Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

#### B. The Administrative Law Judge's Decision

After considering the evidence of record, the ALJ concluded at the fifth sequential step that plaintiff was not disabled, that is, he is capable of performing work in the national economy. The ALJ's findings were:

Step 1: The claimant has not engaged in substantial activity since December 26, 1986. (Finding 2, Tr. 17).

Step 2: The medical evidence established claimant has severe coronary artery disease, a history of Crohn's disease, and adhesive capsulitis and had a coronary bypass operation. (Tr. 17, Finding 3).

Step 3: Claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 107, Finding 4).

Step 4: Claimant is unable to perform his past relevant work as a carpenter, oil field worker and construction carpenter. (Tr. 108, Finding 6).

Step 5: Claimant has the residual functional capacity to perform a wide range of light work [4] as reduced by the limitations of prolonged standing, lifting, or carrying more than fifteen pounds, or preferring work at shoulder level. (Tr. 108, Finding 5, 7, 12).

The ALJ concluded that jobs existed in significant numbers in the national economy and pursuant to Rule 202.11 of Appendix 2, plaintiff was not disabled. (Tr. 18–19).

### IV. Discussion

#### A. General Rules for Decision

Plaintiff has the burden of establishing disability by a preponderance of the evidence. Once plaintiff establishes a prima facie case by showing an inability to perform

---

4. Light work is defined as:
 (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds. Even though the weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. §§ 404.1567.

relevant previous employment, the burden shifts to the Secretary to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy.

 To rebut a prima facie case, the Secretary must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. Alternatively, in certain instances the Secretary is entitled to rely on the medical-vocational guidelines (the "grids") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Part 404, Subpart P, Appendix 2 (1986).

### B. Credibility: Allegations of Pain

 Subjective evidence of pain testified to by a plaintiff must be considered in a decision regarding benefits. *Parfait v. Bowen*, 803 F.2d 810, 813 (5th Cir.1986); *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir.1981). Amendments to the social security statute require, however, that a plaintiff's statements concerning pain be corroborated by objective medical evidence. 42 U.S.C.A. § 423(d)(5)(A) (West Supp.1985).

The Act essentially codifies the regulation, § 404.1529, and provides:

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ...; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged.

42 U.S.C. § 423(d)(5)(A); *Hampton v. Bowen*, 785 F.2d 1308, 1309 (5th Cir.1986).

 While pain can be a disabling condition, *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir.1985), all pain is not disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir.1985). The fact that a plaintiff cannot work without some pain or discomfort will not render him or her disabled. *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984). A plaintiff's

allegations of pain must be evaluated against the other evidence in the record. *Laffoon v. Califano*, 558 F.2d 253, 255 (5th Cir.1977).

 The task of determining whether pain is disabling falls, in the first instance, within the discretion of the ALJ whose decision on severity is entitled to considerable deference. An absence of objective factors indicating the existence of severe pain—such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition—can itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir.1988). A resolution of conflicts between the subjective evidence and the medical evidence should depend upon the ALJ's evaluation of the credibility of the claimant's complaints of pain. *Id.*

 In this circuit, pain, in and of itself, can be a disabling condition under the Act, but only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir.1988).

 While it may be within the discretion of an ALJ to determine the disabling nature of pain subjectively asserted by the claimant when the medical evidence is inconclusive, the ALJ's unfavorable credibility evaluation will not be upheld on judicial review where the uncontroverted medical evidence shows a basis for complaints of pain. The ALJ must weigh the objective medical evidence and articulate reasons for discrediting a claimant's subjective complaints of pain. *Abshire v. Bowen*, 848 F.2d 638 (5th Cir. 1988) (*citing Cook*, 750 F.2d at 395). Failure to consider subjective evidence of pain is reversible error. *Owens v. Heckler*, 770 F.2d at 1281.

### C. Application of the Rules to this Case

Plaintiff disputes the ALJ's decision and advances the following points of error:

(1) The Secretary did not give proper weight to examining physician reports and relied improperly on the testimony of a nonexamining medical expert.

(2) The ALJ based his decision on an improper hypothetical to the vocational expert.

(3) The ALJ did not give adequate weight to the plaintiff's subjective complaints of pain.

Each of these objections will be discussed separately.

**(1) Testimony of the medical expert was given appropriate weight.**

■ Plaintiff contends the ALJ did not give proper consideration to the comments of his examining physicians and instead relied on the ME's opinion.

■ The ME relied on the normal results of shoulder X-rays and the several diagnosis of the plaintiff's condition to reach his conclusions. The ME's testimony is supported by the lack of objective medical evidence contained in Dr. Heath's short report. Further, Ms. Watson's recommendation that plaintiff would regain some modicum of daily functioning capacity and employment capabilities should a treatment or rehabilitation program be undertaken corroborates the ME's opinion. The ALJ is entitled to determine the credibility of medical experts and weigh the opinions accordingly. *Griego v. Sullivan*, 940 F.2d 942 (5th Cir.1991); *Moore v. Sullivan*, 919 F.2d 901 (5th Cir.1989).

As discussed *supra*, it is within the discretion of the ALJ to determine the disabling nature of pain. It was not the ALJ's holding that plaintiff did not suffer from pain or his pain did not affect his ability to work. On the contrary, the ALJ found that plaintiff did suffer from pain but the pain did not prevent him from doing light work with the requisite noted limitations. The Fifth Circuit has

> repeatedly held that the Secretary may rely on the medical-vocational guidelines to establish that work exists for a claimant only if the guidelines' "evidentiary underpinnings 'coincide exactly with the evidence of disability appearing on the record.'"

*Lawler v. Heckler*, 761 F.2d 195, 197 (5th Cir.1985) (quoting *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir.1983)) (quoting *Thomas v. Schweiker*, 666 F.2d 999, 1004 (5th Cir.1982)).

It therefore was not an error for the ALJ to conclude plaintiff was capable of performing light work with additional limitations imposed by his specific medical condition, because there was adequate testimony from the VE to corroborate jobs with these limitations actually existed in the national economy. *See* Tr. 138–144. In addition, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967. This further increases the types of jobs plaintiff can perform in the national economy.

The medical evidence does not contradict this conclusion. No physician of record stated that plaintiff was permanently disabled from all work. The ALJ may rely on the determination of a non-examining physician when, as in this case, those findings are based on a careful evaluation of the medical evidence and do not contradict those of the examining physicians. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990).

**(2) The vocational expert was not subjected to improper hypothetical.**

■ Plaintiff claims that the vocational expert's testimony was tainted by an improper hypothetical posed by the ALJ. Further, plaintiff argues the VE testified that "given claimant's subjective complaints the claimant could not work at any type of job given his current physical condition." This statement is not supported by the record. The VE testified that reducing the lifting parameters would result in a significant decrease in job opportunities but was not adamant as to their complete obliteration upon reflection. He testified, "I think it would reduce all of the jobs ... eliminate them ... the only type of job he might be able to do that would require lifting less than five pounds would be something like a cashier, an unskilled cashier." (Tr. 138).

The answers given by the VE were in response to hypotheticals posed by the ALJ which inquired about the impact of plaintiff's special medical restraints on different types

of employment. The ALJ posed these hypotheticals based on his evaluation of plaintiff's residual functional capacity. In response, the VE testified that jobs were available despite plaintiff's physical limitations. In posing a hypothetical, the ALJ need only add the recognizable disabilities. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988). Review of the transcript reveals the ALJ was sufficiently precise in articulating to the VE the kinds of restrictions he wished the answer to be based upon. Therefore, the hypothetical was not improper, as a modicum of preciseness was exercised. *See Ulrick v. Heckler*, 780 F.2d 1381 (8th Cir.1985). The assumption underlying the ALJ's hypothetical is supported by substantial evidence.

**(3) The ALJ properly considered plaintiff's subjective complaints of pain.**

██ Plaintiff asserts the ALJ improperly rejected his subjective complaints of diarrhea, inability to lift, and pain. In support of this argument, plaintiff reiterates that he has bouts with diarrhea two to three times a week, that he cannot lift even a gallon of milk, and must take medication for pain, which makes him drowsy.

The ALJ wrote that he evaluated plaintiff's subjective complaints pursuant to SSR 88–13 and found his complaints to be "exaggerated" and "not credible to the extent contended." (Tr. 15). The ALJ noted the medical records limiting plaintiff's range of motion were wholly based on his subjective complaints of pain, and not objective medical evidence.

There is conflicting evidence between the subjective evidence and the medical evidence. In such a case, resolution of the conflicts should depend upon the ALJ's evaluation of plaintiff's credibility. *See Hollis*, 837 F.2d at 1385. Subjective complaints of pain must at least be corroborated by objective medical evidence. *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir.1991). This element is lacking in the case at hand. As the ALJ noted, "symptomatology from claimant's adhesive capsulitis and coronary artery disease were taken into consideration by the medical expert when determining that claimant was limited to performing a residual range of light work." (Tr. 15). Further, the ME testified he did not "hear anything related to,

to the Crohn's disease being a ... serious problem ... for him now or being limiting him from working at this time." (Tr. 114–15). Therefore, the ALJ properly considered a lack of objective medical evidence as a failure to corroborate plaintiff's complaints of pain or work limitations with regard to his bouts with diarrhea.

Because the ALJ adequately articulated the rationale behind his unfavorable assessment of plaintiff's credibility and the record contains substantial evidence to support his reasoning, the finding that plaintiff's pain is not disabling must be upheld. *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir.1983).

**V. Conclusion**

That there is evidence of plaintiff's disability is not in dispute. Indeed, under almost any customary definition, plaintiff would be considered "totally disabled" from engaging in gainful employment. However, a claimant is disabled under the Social Security Act only if he is incapable of engaging in *any* substantial gainful activity. *Milam*, 782 F.2d 1284. Title 42 U.S.C. § 423(d)(2) provides in part that one's physical or mental impairment must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, a specific job vacancy exists, or whether he would be hired if he applied for work.

This court's limited role is to determine whether the ALJ's decision was supported by substantial evidence, that is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. This is not a difficult standard for defendant to meet. In light of the "bordering on unrealistic" standard the court must apply in evaluating these decisions, a review of the total record reveals that the Secretary has offered substantial evidence that plaintiff is able to perform some kind of substantial gainful activity.

## VI. Recommendation

The Secretary's decision should be affirmed.

## VII. Objections

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained within this report within ten days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 248, 106 S.Ct. 466, 614, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–277 (5th Cir.1988).

SIGNED this 24th day of January, 1995.