**Freddie E. MILAM, Plaintiff-Appellant,**

v.

**Otis W. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.**

No. 85–4395
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1986.

Wright & Hennen, Dennis Hennen, Monroe, La., for plaintiff-appellant.

Thomas Stanton, A. Faye Dance-Sheppard, Dallas, Tex., defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

On May 17, 1983, appellant Freddie E. Milam filed for disability benefits under the Social Security Act, alleging that he was unable to work because of injuries sustained in two automobile accidents. He was denied benefits administratively at three levels.

Milam then obtained a de novo hearing before an Administrative Law Judge. The ALJ also denied benefits, finding that appellant was not disabled within the meaning of the Social Security Act. The Appeals Council did not grant Milam's request for review, and the ALJ's decision thus became the final decision of the Secretary.

Pursuant to 42 U.S.C. § 405(g), Milam sought review of the Secretary's final decision in United States District Court. The United States Magistrate recommended that the Secretary's motion for summary judgment be granted and the district court, accepting this recommendation, granted

summary judgment for the Secretary. Timely appeal to this Court was filed. Finding substantial evidence to support the Secretary's decision, we affirm.

## I

Appellant was forty-one years old at the time of the hearing before the ALJ. He is a high school graduate but has had no subsequent training or education. Appellant's past relevant work consists of being a co-owner in an import production business, an owner and supervisor in a building and painting business and a truck driver for a transport company.

Milam received disability benefits from February 24, 1978 through March 31, 1983 for an unrelated disability (a severe herniated disc), but his present claim arose as a result of two automobile accidents which occurred on January 25, 1983 and February 25, 1983. As a result of these accidents, the ALJ found, Milam now has a severe spinal impairment, which renders him unable to perform past relevant work.

Appellant was hospitalized twice after his first accident. His chief complaint was of headaches. Although extensive testing was done, there were no significant findings. After his second accident, Milam experienced pain in the neck, right shoulder, and head. He returned to the hospital, where he stated that he had been feeling much improved until the second accident. Again, testing produced no significant results. Analgesics, muscle relaxants, and application of moist heat to the neck resulted in some improvement of Milam's condition.

On April 20, 1983, appellant had an orthopedic consultation with Dr. Rifat M. Nawas, M.D. Dr. Nawas found early degenerative changes in the cervical spine. There was no evidence of nerve root compression or disc herniation. Milam was advised to use a soft neck collar for a few hours a day and to take Naprosyn for pain. Dr. Nawas was of the opinion that Milam's recovery could take up to a year. Dr. Nawas saw Milam again in May. At that time EMG nerve conduction tests showed no impairment of the nerve functions in appellant's neck.

On May 1, 1983, appellant was admitted to Doctor's Hospital in Shreveport, Louisiana under the care of Dr. H.K. Faludi, M.D., a neurosurgeon. During this hospitalization, a bilateral occipital neurectomy was performed to relieve his persistent severe cervico-occipital pains. His postoperative course was uneventful and he indicated that he was free from his previous severe headaches.

On May 31, 1983, Milam was hospitalized again for treatment of post-traumatic depression. Laboratory results were essentially negative. There were findings of psychosomatic problems and depression. There were no gross neurological defects found. It was recommended that Milam go to a chronic pain center for treatment and appellant did this.

On July 12, 1983, Milam was admitted to Riverside Community Hospital under the care of Dr. James A. Albright, M.D. for evaluation of acute low back symptoms developed after Milam slipped in a pool. Exploratory surgery of the L3–S1 spine was done and a considerable amount of scarring was removed, but no significant disc material was found. Milam's back pain improved, but his neck pain returned and did not respond to treatment.

Dr. Albright continued to follow appellant's condition. Milam continued to suffer headaches and therefore exploratory surgery of the greater occipital nerves was performed on January 20, 1984. Neuromas were found alongside the nerves and were removed along with substantial segments of the nerves. Following this procedure, Dr. Albright rendered this opinion:

> Mr. Milam was totally disabled on March 31, 1983, apparently the date in question. At the present time, he is significantly better than he was prior to the last two operative procedures. Nevertheless, he is still totally disabled for any type of productive activity. I feel that his disability is permanent and do not feel that

he will ever reach the point where he will be able to work in the future.

At the February 3, 1984 hearing before the ALJ, appellant testified that he suffered unbearable pain in his head, although it had been reduced quite a bit by the January 20 surgery. He also stated that he had constant back and leg pain which prevented him from sitting normally or driving any distance by himself.

Milam also stated that he usually goes to church. He is active on church committees and sometimes attends their meetings. He works a little bit in the yard, does some fishing and walks about a quarter of a mile every day.

After considering the evidence summarized above, the ALJ determined that Milam had a severe cervical impairment and was unable to perform his past relevant work as a builder or truck driver. However, the ALJ found that Milam's complaints of disabling pain were not medically substantiated and were not credible. He determined that appellant had the residual functional capacity to perform the full range of "light work" as defined by the regulations. 20 C.F.R. § 404.1567(b) (1985). Applying the standards set out in the regulations to this finding, along with Milam's age, experience and education, the ALJ was required to find that Milam was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, No. 202.20 (1985). These standards may be used in lieu of calling a vocational expert to testify. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## II

Under the applicable standard of review, the Secretary's final decision must be upheld if it is supported by substantial evidence. 42 U.S.C. § 405(g); *see Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983). In determining whether substantial evidence exists, we must consider objective medical facts, diagnoses and opinions of treating and examining physicians, subjective evidence of pain, and claimant's age, education and work experience. *See De-*

*Paepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972). We must also be mindful that once a claimant proves that he is unable to engage in past relevant work (as Milam did here) the burden of proof shifts to the Secretary to show that the claimant is able to perform some other type of substantial work in the economy. *Ferguson v. Schweiker,* 641 F.2d 243, 246 (5th Cir.1981).

■ It is also important to note that Milam last met the special earnings requirement of the Social Security Act on March 31, 1983. 42 U.S.C. § 416(i)(3) and § 423(c)(1). Therefore, Milam is only eligible for disability benefits if he became disabled on or before March 31. *See Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir.), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979). An impairment which arose or became disabling after March 31 (e.g., an impairment resulting from the slip in the pool or the subsequent surgical procedures) cannot be the basis for a finding of disability. *Owens v. Heckler,* 770 F.2d 1276, 1280 (5th Cir.1985).

■ Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) and § 423(d)(1)(A). The fact Milam suffered some impairment does not establish disability. Milam was disabled only if he was incapable of engaging in *any* substantial gainful activity. *Owens, supra,* 770 F.2d at 1280. The ALJ's conclusion that Milam's impairment would not prevent him from performing "light work" was supported by substantial evidence.

First, the objective medical evidence on appellant's condition supports the conclusion that he was not disabled. X-ray studies of Milam's cervical spine showed no significant abnormalities. His EEG was normal. Dr. Greer's physical examination showed only "some limitation to range of motion" in the neck area. Dr. Nawas found "moderate limitation of motion in the

cervical spine in all directions." He also noted "full range of motion in the shoulders and upper extremities." Dr. Nawas concluded that Milam had early degenerative arthritis in the cervical spine but found no evidence of nerve root compression or disc herniation.

Dr. Nawas expected that Milam would recover within a year. Dr. Faludi also indicated that Milam's response to treatment was good. Dr. Faludi noted that the occipital neurectomy had relieved appellant of his severe headaches. Dr. Albright also stated that appellant's response to the January 20, 1984 exploratory surgery was "excellent." In short, the bulk of the medical evidence and opinions supports the conclusion that Milam was able to engage in substantial gainful activity.

In addition, the ALJ's decision is supported by Milam's own testimony that he was able to attend church, work in the yard, fish and walk a quarter of a mile each day. In *Owens*, for example, we found that the ALJ's conclusion that the claimant could perform light work was supported by claimant's own testimony that:

> [H]e could stand 15–20 minutes at a time, sit for one hour, walk about one mile, and drive an automobile short distances. His daily activities were limited, but included attending church, doing light yard work, going to the grocery store and caring for his personal needs. He believed he could carry 10 pounds, but not without pain; he had never tried to lift 20 pounds.

*Owens, supra,* 770 F.2d at 1282.

Milam argues that *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir.1981), mandates reversal of the ALJ's decision in this case. *Smith* does not support Milam's position. In *Smith* we reversed the ALJ's finding of no disability and remanded the case to the Secretary for three reasons. One reason was the Appeal Council's failure to consider additional evidence. This issue is not presented here. A second reason was the ALJ's failure to give any weight to the claimant's subjective testimony of pain. By contrast, in the instant case the ALJ considered Milam's complaints of disabling pain and concluded that they were not credible in light of the medical evidence.

The final reason for our reversal in *Smith* was that the only evidence supporting the ALJ's decision was the testimony of a "consulting 'one-shot' physician selected by the Administration;" this testimony contradicted the opinion of the claimant's treating physician. *Smith, supra,* 646 F.2d at 1080–81. On the other hand, the ALJ's decision in the case at bar was supported by objective medical evidence and the opinions of several physicians, chosen by appellant himself. Furthermore, Milam's own testimony establishes that he can perform substantial physical activities. *Compare id.* at 1079 (claimant testified that the "pain was so disabling that he could not engage in house or yard work, shopping, hunting, fishing or any physical activity outside of church attendance or short trips to pick up his children from school").

■ Milam's treating physician, Dr. Albright, did state that he believed Milam to be disabled. A treating physician's opinion is normally entitled to considerable weight. *Fruge v. Harris,* 631 F.2d 1244, 1246 (5th Cir.1980). However, in this case there were contrary opinions of other treating physicians. These opinions, along with the objective medical evidence, constituted "good cause" for the ALJ to reject Dr. Albright's opinion.[1]

In addition, it should be noted that Dr. Albright is not an expert on the Social Security Act. Based on the objective medical evidence in the record the ALJ could have concluded that Dr. Albright's opinion as to Milam's "disability" reflected not a

---

1. It is incorrect to suggest that simply because Dr. Albright's opinion was the only one rendered after Milam's last two instances of surgery that it is somehow "unrebutted" by the earlier medical evidence and opinions. The issue before the ALJ was Milam's condition as of March 31, 1983 and the earlier physicians were in at least as good a position as Dr. Albright to shed light on that matter.

medical disagreement with the other physicians, but a misunderstanding of the meaning of "disability" as used in the Social Security Act. *See Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir.1984).

For the foregoing reasons the finding of the ALJ that Milam was capable of performing light work was supported by substantial evidence. Application of this finding, along with Milam's other attributes, to the vocational regulations required a determination that appellant was not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, No. 202.20 (1985).

## III

Since the ALJ's decision was supported by substantial evidence, the judgment of the district court is

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, dissenting:

In this case both parties waive oral argument. This means that the Court rule requiring unanimity among the three judges in a summary calendar decision does not apply. After a careful consideration I find that I must record this dissent.

I am well aware, of course, that every official decision which has been rendered thus far in this case through the administrative hierarchy, in the federal district court, and now in this Court has been against the claim of disability of appellant. I cannot escape the belief that under the law, however, the authorities and the courts have too readily concluded that someone who has very serious back trouble accompanied by a great deal of pain is not totally disabled just because he can sit long enough to go to church regularly and can engage in short periods at light work around the house or in the garden. The statute and regulations simply do not define this minimal capability as possessing a "maximum sustained capability limited to light work", which in terms is the finding being reviewed in this Court.

I do recognize that by statute, 42 U.S.C. § 405(g), our appellate review is limited to determining whether there is substantial evidence in the record to support the factual findings of the Secretary. "We may not retry factual issues, reweigh evidence, or substitute our judgment for that of the factfinder." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir.1983). If supported by substantial evidence on the record considered as a whole, the Secretary's findings are conclusive. *E.g., Bowman v. Heckler*, 706 F.2d 564, 567 (5th Cir.1983).

In dissenting, however, I stress the rule recognized in the majority opinion which shifts the burden of proof to the Secretary once the claimant proves that he or she can no longer engage in the work which he or she has done in the past. The Secretary must then prove that claimant is able to work at one of the defined lesser levels of work requirements. *Dorsey v. Heckler*, 702 F.2d 597, 603 (5th Cir.1983); *Ferguson v. Schweiker*, 641 F.2d 243, 246 (5th Cir. 1981). There is no dispute in this case as to claimant's lack of physical capacity to do this prior work.

The record contains several diagnoses and prognoses by doctors. Some of them conclude either that claimant is not disabled or will recover from his disabilities over a period of time. There are two remarkable aspects of these reports, however. In-depth diagnoses by doctors, with one exception, all took place before major back surgery and before the last surgical procedure which appellant has had. With the one exception described later the diagnoses in the general time frame of the recent surgeries were only the cursory reports on Social Security forms which totally lacked the detailed evaluation of claimant's condition found in the physician's diagnosis which claimant submitted.

In July 1983, appellant had his third major back surgery. This third operation involved removing a substantial amount of scar tissue and fusing L–3 & 4 and L–4 & 5 with metal pins. In the later surgery in January of 1984, the greater occipital nerves were surgically explored and neuro-

mas were found on each side and excised along with substantial segments of the nerves.

Dr. James A. Albright, who is Chairman of the Department of Orthopaedic Surgery at the Louisiana State University School of Medicine in Shreveport, Louisiana, performed the last two surgical procedures described above. Appellant has been under Dr. Albright's orthopaedic care since June 1978, when the doctor performed an emergency operation on appellant's lower spine to remove an acute herniated disc. This doctor's medical diagnosis is the exception to the cursory form reports of Social Security doctors given around the time of the two surgeries. His conclusion immediately before the hearing before the Administrative Law Judge read:

> Mr. Milam was totally disabled on March 31, 1983, apparently the date in question. At the present time, he is significantly better than he was prior to the last two operative procedures. Nevertheless, he is still totally disabled for any type of productive activity. I feel that his disability is permanent and do not feel that he will ever reach the point where he will be able to work in the future.

The Secretary relied upon the largely abbreviated and casual medical reports of doctors who were evaluating appellant's condition before the latest two surgical procedures. While it is true that the critical disability date is before these two surgical procedures, it is routine in social security disability cases to receive evidence of later physical developments as they cast light upon the level of disability on the critical date. These two surgeries do cast a strong illumination. Thus appellant persisted in claiming serious pain in his neck area. In disability evaluations doctors kept saying they found nothing wrong. Then in surgery in January 1984, conditions causing significant pain were found and some correction was accomplished.

Further the doctors making the government's evaluation even after the serious lower back surgery and fusion in July 1983, simply concluded that he was not disabled until the date of the surgery, with no reference at all to the disabling effects of his physical condition before the surgery which brought about the necessity for it.

Further decisional reliance was based upon the conclusion that appellant's claim, especially with respect to the neck injury, was a subjective claim of disabling pain. Under the Social Security Benefits Reform Act of 1984, 42 U.S.C. § 423(d)(5)(A), subjective symptoms of pain alone cannot constitute conclusive evidence of disability. The amendments and the regulations state that there must be objective medical evidence showing existence of a physical impairment which could reasonably be expected to provide pain. On the basis of evidence the later surgery on his neck in an attempt to relieve pain grew out of a condition which was clearly troubling him and giving him great pain before the critical date of March 31, 1983. That surgery showed such a physical impairment existed and further showed only partial remedy.

The only other evidence in the record consists of appellant's own testimony at the hearing by the Administrative Law Judge in which he testified that he cannot sit or stand for long without great pain. Appellant, however, usually goes to church. He is also somewhat active on church committees and goes to their meetings outside his home sometimes. He testified that he works a little bit in the yard and does some fishing from the shore and walks about a quarter of a mile every day. He stated that he leaves the home rarely and this is partially because he cannot afford excursions away from home but also partially because of his discomfort and pain when he is away from home.

On the basis of this summary of the record, I must conclude that the Secretary did not satisfy the burden of proving that appellant is capable of carrying out the "full range of light work". 20 C.F.R. § 404.1567(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

The Secretary concluded that appellant was not disabled because he possessed "maximum sustained capability limited to light work." 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00; Table 2, Rule 202.20. Yet, this conclusion was based heavily upon cursory form reports of doctors given before the second of the two surgical procedures carried out on appellant and ignoring the physical condition that brought about the first. Then, the only other evidence is appellant's own description of his activities. It is difficult, as the Administrative Law Judge seemed to do, to find solace in the conclusion that appellant was capable of light work because he went to church with some regularity, participated in some church committee meetings, fished a little, helped his wife in the yard a little, and walked about a quarter of a mile a day, and with the further testimony that he found it exceedingly difficult and painful to sit any length of time.

The Secretary further concluded that the basic claim of disability was grounded upon subjective pain without medical support. It is difficult to understand why the medical support occasioned by the need for radical surgery on the lower spine and by two instances of surgery on his neck following the automobile accidents which originally caused the neck injury, together with the conclusion of the orthopaedic surgeon who did the surgery that he will continue to be disabled, is not adequate objective medical support for the subjective evidence of pain.

This case is very much like the case of *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981), in which the evidence showed that Smith regularly attended church and took short trips to pick up his children at school but that the pain was so disabling that he could not engage in any substantial amount of yard work, shopping, hunting, or fishing. In that case we overturned a finding of no disability by the Secretary. It is exceedingly difficult to translate appellant Milam's description of his own activities, which is unchallenged in the record, to capability to engage in a full eight hour day of work in which lifting up to 10 pounds takes place regularly and a substantial amount of walking and standing on the feet is involved.

The opinion of a claimant's regular doctor, who in this case is Dr. Albright, is to be afforded "substantial weight". *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980). Conceding that his opinion, however, is not controlling, in this case we search the record in vain for specific countering evidence. The earlier medical opinions do not take into account the physical conditions that brought about the need for a substantial spinal fusion and second surgery upon occipital nerves in which abnormal nerve tumors were found. Further, the only description of his activities since those operations stands as strong support for Dr. Albright's conclusion that appellant was obviously totally disabled on the critical date of March 31, 1983, and that after the surgeries there was some improvement but he continues to be totally disabled and his disability is permanent. Dr. Albright operated on appellant. He did not have to guess. He knew what appellant's condition was before the surgery and the condition which remained after surgery.

The majority of the Court relies upon *Owens v. Heckler*, 770 F.2d 1276 (5th Cir. 1985). In that case the evidence showed the claimant was not as restricted in his activities as is appellant. He had only aging degenerative spinal problems and controlled high blood pressure. He had had no surgery and no trauma. Of substantial significance is the fact that Owens had no evidence by his attending physician that he was totally disabled. Appellant, in contrast, is diagnosed as totally disabled by his orthopaedic surgeon who holds a highly responsible position in academic orthopaed-

ic surgery. I cannot find the *Owens* case persuasive in appellant's situation.

It is not necessary to review appellant's additional claim that the Administrative Law Judge did not make findings as to what particular kinds of light work appellant could carry out. Such findings are irrelevant because the Administrative Law Judge concluded that he could "perform the full range of light work" as defined in the statute.

I find in this record a failure of the Secretary to develop and introduce substantial evidence to counter appellant's claim of total disability once the burden of proof shifted to the Secretary. In my opinion the decision of the district court should be reversed.