**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLOTTE J. STEWART,
Plaintiff-Appellant,

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

No. 98-1785

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, District Judge.
(CA-96-653-2)

Argued: May 4, 1999

Decided: July 12, 1999

Before WIDENER, MURNAGHAN, and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jimmy Alan Pettus, Charlotte, North Carolina, for Appel-
lant. John Carl Stoner, Office of the General Counsel, SOCIAL
SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee.
**ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Walter
C. Holton, Jr., United States Attorney, Gill Beck, Assistant United
States Attorney, Mary Ann Sloan, Chief Counsel, Region IV, Dennis

R. Williams, Deputy Chief Counsel, Elyse Sharfman, Acting Branch Chief, Sonia G. Burnett, Assistant Regional Counsel, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Seeking social security disability benefits Charlotte Stewart, the plaintiff, brought a proceeding which led to a decision by an administrative law judge (ALJ) denying such benefits. It is contended on Stewart's behalf that the ALJ failed to review medical testimony from two doctors. In fact, it appears that the ALJ did consider such evidence. Further, the ALJ's decision that the headaches, overall physical pain throughout the plaintiff's body, and mental health problems were insufficient to render the plaintiff incapable of useful light work is supported by substantial evidence. We therefore affirm.

I.

Stewart was 51 years old at the time of the ALJ's decision on December 20, 1994. She has a high school education and past relevant work as a sewing machine operator and waitress. Stewart testified that her last full-time job was as a sewing machine operator in 1987. The work was not complicated, and was performed in a seated position. According to Stewart's testimony, she was not required to interact with others, but was allowed to talk to coworkers as long as the work was done.

The ALJ found that Stewart had not engaged in substantial gainful activity since November 20, 1987, her alleged onset date of disability. The ALJ further found that she met the disability insured status

2

requirement of the Social Security Act on that date. However, the ALJ determined that Stewart was insured only through December 31, 1992.

The record shows that Dr. Barry Barker was Stewart's primary physician throughout all times relevant to the present appeal. Stewart's complaints to Dr. Barker were primarily for pain and swelling. In April 1988, Stewart complained to Dr. Barker about increased pain in her neck and shoulders. In April 1989, Stewart related that she woke up with a feeling of stiffness in her back. Dr. Barker noted tenderness on palpation of the low back and assessed Stewart's condition as lower back strain. In August and September 1989, Stewart visited Dr. Barker with complaints of dizziness. In February 1990, Stewart visited Dr. Barker with a complaint that her body ached all over. She related that she felt tired and had been sleeping more than usual. Dr. Barker noted that Stewart appeared "somewhat depressed" and he prescribed Prozac.[1]

Dr. Barker is not the only doctor who has evaluated Stewart. She underwent examinations by, inter alia, Dr. Meredith Hall and Dr. Thomas Gresalfi. R. Meredith Hall, Ph.D. gave Stewart a consultative psychological evaluation on October 4, 1989. This examination was conducted pursuant to Stewart's application for services through the Division of Vocational Rehabilitation, not for purposes of determining her eligibility for Social Security benefits. Dr. Hall diagnosed Stewart with "anxiety, mixed with depression, severe." Dr. Hall described Stewart as agitated and anxious. She noted that Stewart had a family history of suicide and that she became tearful when discussing the deaths of family members, but generally retained control of her emotions.[2] Dr. Hall noted that Stewart could execute most average work movements adequately and her response speed was still ade-

_____

[1] Although none of his contemporaneous evaluations contained this diagnosis, as of 1995, Dr. Barker "assumed" that Stewart was "most likely disabled" due to multiple polyarthralgias and polymalgias in December 1992. Such an opinion is not binding on the Social Security Administration. See 20 C.F.R. § 404.1527(e)(1) (1998).

[2] In the two years prior to the claimed onset of her disability, Stewart's father killed himself, her mother died of cancer, and her son committed suicide.

quate for most production demands. Importantly, Dr. Hall commented that Stewart could benefit from working in a low stress environment.

On November 22, 1993, Stewart was evaluated by Dr. Thomas Gresalfi. Stewart related complaints about physical symptoms and she told Dr. Gresalfi that she felt depressed following her son's death in January 1987. Dr. Gresalfi opined that Stewart had "poor or no[ ]" ability to function in the following areas: follow work rules, interact with supervisors, deal with work stresses, maintain attention and concentration, understand, remember, and carry out complex job instructions, and demonstrate reliability. Dr. Gresalfi indicated that Stewart's ability to function in the following areas was "fair": deal with the public, use judgment, function independently, understand, remember and carry out simple job instructions, behave in an emotionally stable manner, and relate predictably in social situations. Stewart's ability was limited but satisfactory in the following areas: relate to co-workers and maintain personal appearance.

Dr. Gresalfi diagnosed Stewart with major depression, single episode, non-psychotic, psychological factors affecting physical condition; fibrocytis, hypertension and headaches. Dr. Gresalfi noted that Stewart's prognosis for returning to work would depend upon her response to psychiatric treatment.

Stewart testified before the ALJ to having limited activities and sleep disruption due to physical pain. She testified that her pain was constant and was only moderately relieved by prescription medication. Stewart stated that she had difficulty climbing hills. Stewart did housework and grocery shopping, but she testified that she often needed help removing items from the shelves at the grocery store. Stewart was still able to take care of her personal needs, including dressing herself, bathing and shampooing her hair. She also visited with her granddaughter and a close friend weekly.

Stewart related that she had been given Prozac by Dr. Barry Barker, her family physician, following her son's death in 1987 or 1988, but that she stopped taking it after hearing adverse publicity about it. She also stated that she contacted a mental health center in early 1988, but did not follow up after the long waiting period because she felt that she was not in need of psychological counseling.

4

The ALJ found that although the medical evidence of record established that Stewart had severe myalgias, degenerative disc disease, depression, and non-severe hypertension, she retained the residual functional capacity to perform light work, including her past job as a sewing machine operator.**3**

The Appeals Council denied Stewart's request for review, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.955 and 404.981 (1998). On appeal, the district court referred the matter to a magistrate for review. The magistrate judge found that the ALJ's decision was supported by substantial evidence. After de novo review, the district court adopted the magistrate judge's recommendation. Stewart now appeals contending that the ALJ committed an error of law in failing to consider all of the medical evidence, in particular the evidence from two doctors, and in failing adequately to state the weight accorded to the evidence.**4**

II.

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairments which can be expected either to result in death or to last for a continuous period of not less than 12 months. See 42 U.S.C.A. § 416(i) (West Supp. 1999). The Social Security regulations provide a sequence of questions to evaluate whether a claimant is disabled. See 20 C.F.R. § 404.1520 (1998). Because Stewart's admittedly

_____

**3** It is worth noting that the ALJ found that Stewart's allegations of physical discomfort lacked credibility, in part because he believed that she had admitted lying in the past in order to receive unemployment benefits.

**4** Stewart abandoned on appeal a number of assertions, including the arguments that (1) the ALJ failed to consider her mental condition as a contributing factor to pain; (2) the ALJ improperly evaluated her credibility; (3) the ALJ improperly evaluated her mental impairment; (4) the ALJ failed to consider a determination of disability by the North Carolina Division of Vocational Rehabilitation; and (5) the ALJ failed to consider her inability to afford medical treatment. Stewart now argues only that the ALJ failed to consider and explicitly weigh all medical evidence of record.

severe impairments were not in the Listing of Impairments in Subpart P, Appendix 1, the ALJ was required to ask whether Stewart retained the functional capacity to return to her past relevant work, and, if not, whether she could perform other work. See id. The burden was on Stewart to show that she could not perform her past relevant work. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The ALJ found that Stewart's residual functional capacities were not inconsistent with her past relevant work as a sewing machine operator, and thus, that she was not "disabled" at any time during her period of coverage.

Under 42 U.S.C.A. § 405(g) (West 1991 & Supp. 1999), the scope of our judicial review is narrow. We may only examine whether the Commissioner's factual findings are "supported by substantial evidence" and whether the Commissioner's legal conclusions are a correct application of controlling law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales , 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB , 305 U.S. 197, 229 (1938)); Craig, 76 F.3d at 589, "`[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to satisfy a refusal to direct a verdict were the case before a jury, then there is `substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

To assist the reviewing courts in determining whether his findings are supported by substantial evidence, the ALJ must"explicitly indicate[ ] the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Thus, "`[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Id. at 236 (internal quotation marks omitted) (quoting Arnold v. Secretary of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). See also 20 C.F.R. § 404.1527(b)-(d).

Stewart has alleged that the ALJ committed reversible error by not considering all of the evidence. Specifically, she asserts that the ALJ violated the command of Gordon v. Schweiker, 725 F.2d at 235-36, by failing to explicitly indicate the weight he accorded to the reports from Drs. Thomas Gresalfi and R. Meredith Hall.

We find no reversible error in the ALJ's treatment of Dr. Gresalfi's evaluation. The ALJ specifically mentioned Stewart's visit to Dr. Gresalfi in his opinion, but only in passing. Still, the ALJ's findings were generally in accord with Dr. Gresalfi's evaluation. The ALJ considered Stewart's alleged depression and gave her "the benefit of the doubt," finding that her mental impairment caused some degree of functional limitation to her ability to perform basic work-related activities. The ALJ noted, however, that Dr. Barker, Stewart's primary physician, had not been concerned enough about her mental health, even considering her family history of problems, to refer her to the care of a mental health specialist. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (opinion of treating physician generally must be given great weight); 20 C.F.R. § 404.1527(d)(2) (1998) (stating that ALJ should give greater, and in some cases controlling, weight to opinions of treating professionals). Further, the ALJ noted that Stewart on her own volition ceased taking Prozac, and did not pursue any treatment for her mental impairment. Cf. 20 C.F.R. § 404.1530 (1998) (stating that the Secretary may deny benefits if a person unjustifiably refuses to follow prescribed treatment); Gordon v. Schweiker, 725 F.3d at 236 (same). Finally, the ALJ noted various aspects of Stewart's daily life which indicated that she could function in a limited manner. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (considering pattern of daily activities in disability evaluation).

In addition to the above, the most important point regarding Dr. Gresalfi's report is that the consultation occurred almost one year after Stewart's insured status had lapsed. Because Stewart's disability insured status ended on December 31, 1992, she had to show that she in fact became disabled prior to that date. It would not have been sufficient for her to show that before December 31, 1992 she suffered from impairments that subsequently became disabling. See Milam v. Bowen, 782 F.2d 1284, 1286 (5th Cir. 1986) (An impairment that became disabling after a claimant's insured status expired cannot be

7

the basis for a favorable finding on a disability claim); Owens v. Heckler, 770 F.2d 1276, 1280 (5th Cir. 1985) (same). The psychiatric evaluation by Dr. Gresalfi was performed on November 11, 1993, eleven months after Stewart's insured status expired. Dr. Gresalfi's report was therefore largely irrelevant to proving that she became disabled between November 20, 1987, her alleged onset date, and December 31, 1992, the date she was last insured. Therefore, even if this report was not considered by the ALJ (and the record's reference to the report belies such a statement), the information in the report was of minimal relevance for determining the state of Stewart's health during the insured period. The command in Gordon v. Schweiker, supra, only applies when the evidence is relevant.

Potentially more troubling, however, the ALJ's report completely fails to mention the evaluation by Dr. Hall, which did occur during the insured period. Dr. Hall's evaluation indicated that Stewart appeared to be in "desperate need of a mental health clinic relationship." Dr. Hall opined Stewart had severe anxiety, mixed with depression and that Stewart was a suicide risk.

The magistrate judge that reviewed the ALJ's decision found that Dr. Hall's report was not material to the instant case because, inter alia, it adds nothing to the opinions of Drs. Gresalfi and Barker that plaintiff suffered from severe depression, and it did not speak to the fact, noted by the ALJ, that Stewart refused treatment for her mental impairment. Further, the magistrate judge noted that Stewart visited with Dr. Hall only once, and thus the information from Dr. Barker, her primary physician, was much more probative. See Coffman v. Bowen, 829 F.2d at 517; 20 C.F.R. § 404.1527(d)(2). Finally, Dr. Hall's evaluation actually assumed that Stewart was able to work because it included a statement indicating that work"that is not totally taxing to her" could be beneficial. Overall, Dr. Hall's opinion was consistent with the ALJ's decision that Stewart was not so impaired that she was unable to perform her past relevant work.

We recognize the continuing requirement that ALJs must be thorough in discussing the weight given to all of the evidence. Although the ALJ in this case was not as thorough as he could have been, we affirm the district court. Both the magistrate judge and the district court evaluated the record as a whole and entered summary judgment

against Stewart because there is substantial evidence in the record to support the ALJ's decision to deny benefits. In 1987 and 1988, Stewart declined anti-depressant medication and psychological counseling, and from 1989 through March 1991 she sought employment assistance with the vocational rehabilitation center. The record indicated that Stewart was able to carry on, albeit with some difficulty, various daily activities, and that she was capable of interacting with people on a limited basis. Further, the medical information received from Stewart's primary physician, with whom she was in contact throughout the relevant period, did not indicate a disabling condition. See Coffman v. Bowen, 829 F.2d at 517; 20 C.F.R.§ 404.1527(d)(2). The ALJ noted that, given Stewart's family history of suicide, if Dr. Barker had considered her mental problems to be severe he would have referred her to a mental health care professional, which he did not.

Ultimately, Stewart's reliance upon Gordon v. Schweiker is misplaced. In that case, we reversed and remanded so that the ALJ could explain the weight given to a variety of medical evidence. However, the medical evidence in that case was in conflict and the ALJ never explained why he chose to end up on one side of the divide rather than the other. See Gordon v. Schweiker, 725 F.2d at 235. In the case at bar the medical diagnoses were not inconsistent. To the extent that some of the diagnoses described Stewart's condition as being more severe than the others, the ALJ explained why he came to the conclusion that he did.

Therefore, the district court is

AFFIRMED.

9