**Reynaldo MESA, Plaintiff,**

v.

**Jo Anne B. BARNHART, Acting Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A. P–02–CV–038.**

United States District Court,
W.D. Texas,
Pecos Division.

March 18, 2003.

John J. Ingram, II, Ingram Law Firm, P.C., McAllen, TX, for Reynaldo Mesa, plaintiff.

Mitchell L. Weidenbach, Assistant United States Attorney, San Antonio, TX, for Jo Anne B. Barnhart, Comr. Social Security, defendant.

## ORDER

EDWARDS, United States Magistrate Judge.

Plaintiff Reynaldo Mesa brought this Title 42, United States Code, Section 405(g) action for review of the decision of the Commissioner of Social Security Administration denying his application for Supplemental Security Income Benefits under Title II and XVI of the Social Security Act. The plaintiff filed his complaint on May 2, 2002. The action was referred to the undersigned United States Magistrate Judge on June 11, 2002. The defendant filed an answer and consented to proceed before a magistrate judge on August 19, 2002. The plaintiff consented to proceed before a magistrate judge on August 26, 2002 and filed a brief on September 3, 2002. The defendant filed a brief in support of the commissioner's decision on October 7, 2002. This court construes the parties' briefs as cross motions for summary judgment. *See* FED. R. CIV. P. 56. It is hereby ORDERED that the defendant's motion is **GRANTED** and the case is **DISMISSED**.

## BACKGROUND AND PROCEDURAL HISTORY

The plaintiff filed applications for disability benefits on October 10, 2000 alleging an inability to work, beginning June 6, 2000, due to a worked related injury to his neck and back. The claim was denied both initially and on reconsideration. An administrative hearing was held before Dan Dane, an Administrative Law Judge (ALJ), on October 11, 2001. The ALJ issued his written decision on October 26, 2001.

The ALJ found that the plaintiff was not entitled to Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI because he was not under a disability as defined by the Social Security Act at any time through the date of the decision. The ALJ concluded that the plaintiff is unable to return to his former type of work, but that he has the residual functional capacity to make an adjustment to other work which exists in significant numbers in the national economy.

The plaintiff filed a request for review of the ALJ's decision by the Appeals Council which denied the request on March 21, 2002. The Appeals Council indicated in their denial letter that there appeared to be no basis for review of the ALJ's decision under the regulations provided by the Social Security Administration. Consequently, the plaintiff commenced a civil action in the United States District Court for the Western District of Texas for review of the ALJ's decision pursuant to Title 42, United States Code, Section 405(g) by the filing of a complaint.

## RELEVANT LAW

### Standard of Review

The limited role of the court is to determine whether the Commissioner applied the proper legal standards and whether his decision is supported by substantial evidence. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990); *Tamez v. Sullivan,* 888 F.2d 334,

335 (5th Cir.1989); *Lovelace v. Bowen,* 813 F.2d 55, 57 (5th Cir.1987). Substantial evidence is evidence which amounts to more than a scintilla, but which can be less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)); *see also Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

A determination as to whether there is substantial evidence in the entire record to support the fact findings or decision of the Commissioner as the trier of fact does not involve re-weighing the evidence, trying the issues de novo, or substituting the judgment of the court for that of the Commissioner. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir.1994); *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987); *Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987); *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir.1986). The Commissioner, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and make credibility choices. *Carry v. Heckler,* 750 F.2d 479, 482 (5th Cir.1985); *Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir.1981). The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings. *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983). If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In other words, "the role of the courts in this quintessentially administrative process is extremely narrow." *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir.1975).

■ Elements of proof to be weighed in determining whether substantial evidence exists include: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; (4) claimant's educational background, age, and work history. *Owens v. Heckler,* 770 F.2d 1276, 1279 (5th Cir.1985) (citing *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir.1972)).

### *Disability Determination*

■ To qualify for disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act. *See* 42 U.S.C. § 423(a). Those claiming disability insurance benefits under the Act have the burden of showing the existence of a disability. *See Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir. 1979). The legal standard for determining whether a disability exists under Title II of the Social Security Act is whether the claimant is unable to perform substantial gainful activity by reason of an impairment expected either to result in death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A). The impairments must be of such severity that the claimant is not only unable to do his previous work, but cannot considering his age, education, and work experience engage in any other kind of substantial gainful work. *See* 42 U.S.C. § 423(d)(2)(A). The corresponding federal regulations provide a five step sequential evaluation to help determine whether the claimant can perform substantial gainful activity. 20 C.F.R. § 404.1520. The five steps are as follows: 1) the claimant is not working in substantial gainful activity, 2) the claimant has a severe impairment, 3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations, 4) the impairment prevents the claimant from doing past relevant work, and 5) the

impairment prevents the claimant from doing any other work. *Id.*

The claimant bears the burden of proof on the first four steps, but the burden shifts to the commissioner for the fifth step. *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir.2000). For the fifth step, the commissioner must show that there are jobs existing in the national economy which the plaintiff can perform. *See id.* Once the commissioner meets that burden, then the burden shifts back to the plaintiff to rebut the finding. *See id.*

## THE ALJ'S FINDINGS

At the time of the ALJ's decision, the plaintiff was 59 years old, has a partial ninth grade education, is fluent and functionally literate in English, and has past relevant work experience as a skilled welder. (Tr. p. 14–15 & 21–22). For the first step of the evaluation process[1], the ALJ found that the plaintiff has not engaged in substantial gainful activity since June 6, 2000, the time of the work-related injury to his neck and back. (Tr. p. 15 & 21). For the second step of the evaluation process, the ALJ found that the plaintiff has severe impairments, including degenerative changes in his cervical spine, a disc bulge at the C4–5 level, with a history of low back and left elbow pain. (Tr. p. 15). For the third step, the ALJ found that, although the plaintiff has severe impairments, he does not have an impairment, or combination of impairments, meeting or equaling an impairment listed in the relevant Code of Federal Regulations. (Tr. p. 15). At the fourth step of the evaluation process, the ALJ found that the claimant is unable to perform his past relevant work as a welder. (Tr. p. 15).

At issue in the present case is the fifth step of the evaluation process. The ALJ has the burden to establish that an applicant can perform available, alternative employment.[2] In order to do this, the ALJ must both determine the plaintiff's residual functional capacity and determine if other work exists in the national economy in significant numbers that the plaintiff can perform. *See Leggett v. Chater,* 67 F.3d 558, 565 (5th Cir.1995). Recall that the impairment must be disabling for at least twelve months. 42 U.S.C. § 416(i)(1)(A), § 423(d)(1)(A), § 1382c(a)(3)(A-B) and 20 C.F.R. § 404.1505(a). The ALJ found that the plaintiff experienced a restoration of function allowing him the capability of performing medium work. (Tr. p. 15). Taking into consideration the plaintiff's age, education, and previous work experience, the ALJ found that there are a significant number of jobs existing in the national economy that he can perform. Thus, the ALJ determined that the plaintiff was not disabled at any time through the date of the decision. (Tr. p. 15).

## THE PLAINTIFF'S ARGUMENTS

In his brief, the plaintiff first argues that the ALJ failed to base his finding with

---

1. Recall that the five-step analysis requires the Commissioner to consider the following: 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix 1 of the regulation, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial activity. 42 U.S.C. 423(d)(1)(A); *Leggett,* 67 F.3d at 563–64 n. 2.

2. The fifth step of the evaluation process involves a two-pronged analysis: 1) determining the claimant's residual functional capacity, or rather, determining what he can still do despite his limitations, 20 C.F.R. § 404.1545(a), and (2) determining whether other work exists in the national economy which the applicant can perform based upon the Medical Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201–03. *See Hoffman v. Barnhart,* 2002 WL 31220354 *1, *6 (E.D.Tex.2002).

respect to the plaintiff's residual functional capacity on an acceptable medical source opinion. That is, the plaintiff argues that the ALJ erred because he allegedly relied only upon a non-examining State agency reviewing physician's assessment.

Second, the plaintiff argues that the record and hearing was insufficient with only a six minute hearing wherein no vocational expert testified and only the plaintiff testified. He argues that the ALJ is required to obtain additional evidence from the treating doctor when the record is insufficient to make a complete determination. The plaintiff argues that the regulations require the ALJ to develop the record by arranging a consultative examination if information necessary to make an accurate RFC determination is not in the record and cannot be obtained from the treating doctor. The plaintiff argues that an accurate determination of residual functional capacity requires determining not only whether or not the plaintiff is capable of engaging in substantial gainful employment, but whether or not he is capable of maintaining such employment on a continuing basis. The plaintiff argues that the medical records do not contain an assessment from the treating physician about whether or not the plaintiff can do medium work on a sustained basis. However, overall, the plaintiff is questioning whether substantial evidence supports the ALJ's decision and whether proper legal standards were applied.

### DISCUSSION

#### Medical Evidence

■ There is substantial evidence to support the ALJ's decision that the plaintiff is not so severely impaired as to preclude all work activities and that he has the residual functional capacity to perform medium work. There was a time when the plaintiff was temporarily disabled. But,

his condition improved, and thus did not last the requisite 12 months.

■ The plaintiff argues that he is disabled because of his neck and back pain which cause functional limitations. However, the only evidence suggesting the plaintiff's inability to do medium work is his own testimony. There is a two part analysis for evaluating subjective complaints of pain under 20 C.F.R. § 404.1529. *See* SSR 96–7p; *Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir.1995). First, the plaintiff must establish a medically determinable impairment that could reasonably be expected to produce the symptoms. *See id.*

Dr. Mallik, the plaintiff's family physician, referred the plaintiff to the Odessa Radiology Group for x-rays on June 12, 2000, shortly after the accident. The results from Dr. Erros Anderson indicate, of the cervical spine, "minor changes of degenerative disc disease," of the thoracic spine, "mild degenerative change," and of the lumbosacral spine, "minimal changes of degenerative disc disease and aortic atherosclerosis." (Tr. p. 116). The next month, on July 18, 2000, the plaintiff had an MRI of the cervical spine and of the lumbar area ordered by Dr. Zigler, the plaintiff's treating physician and an orthopedic surgeon. The lumbar MRI showed no evidence of disk protrusion, spinal canal or neural foraminal stenosis or neural impingement. (Tr. p. 107). However, the cervical spine MRI showed central disc protrusion at the C4–5 level. (Tr. p. 105). The ALJ found that the cervical disc protrusion could produce the plaintiff's subjective complaints of pain at that point.

The next step is to determine the intensity, persistence, and functionally limiting effects of the symptoms and determine the extent to which the symptoms affect the individual's ability to do basic work activities. *See id.* The ALJ found that the claimant's statements about pain were not

fully credible and cited the factors he considered outlined in 20 C.F.R. § 404.1529. The factors he considered were: 1) the claimant's daily activities, 2) the duration, frequency, and intensity to the pain, 3) precipitating and aggravating factors, 4) the type, dosage, effectiveness and side effects of medication, 5) the prescribed treatment regimen, and 6) any other palliative measures he may use. 20 C.F.R. § 404.1529 & 416.929; SSR 96–7p.

The claimant's subjective complaints must be corroborated at least in part by objective medical evidence. *See Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir.2001). The ALJ indicated that there have been no signs of an incapacitating impairment. He indicated that the claimant has not required additional surgery or intensive physical therapy. The ALJ questioned the plaintiff about his work history as they relate to his limitations. (Tr. p. 22–26). The plaintiff testified that he had been released by his treating physician to go back to work with the limitation of not lifting over 60 pounds. (Tr. p. 23 & 26). The plaintiff did not contribute additional complaints or express further limitations, such as life style changes, when asked by the ALJ if there was anything else he wanted to put in the record. (Tr. p. 27). The ALJ noted that the non-medical evidence shows that the plaintiff is not impaired so as to preclude him from performing any work at all.

■ The ALJ also found that the objective medical evidence shows that the plaintiff is not impaired so as to preclude him from performing any work. The plaintiff's argument occurs at this point. He argues that the ALJ incorrectly relied upon the State agency physician's assessment in evaluating the objective medical evidence to determine his residual functional capacity. The plaintiff notes that the ALJ is required to give controlling weight to a treating physician's opinion if the ALJ

finds that opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2).

The plaintiff's argument is incorrect. In making his determination, the ALJ did rely upon the opinion of the treating physician. He thoroughly discusses the opinion of Dr. Zigler which supports a determination of the plaintiff's ability to perform medium work. The ALJ did not solely rely upon the State agency physician's assessment as the plaintiff argues, but considered the opinions of all the relevant medical evidence. The ALJ found that the medical opinions of the physicians were consistent with each other and that there was substantial evidence in the record from both the treating and examining physicians that the plaintiff is not disabled.

As mentioned, the MRI of both the cervical and lumbosacral spine on July 18, 2000, ordered by Dr. Zigler reveals no disc protrusion except for "a tiny central disc protrusion without evidence of encroachment upon the spinal cord." (Tr. p. 104–107.) After physical therapy and the use of pain medication, the plaintiff still complained of pain. Dr. Zigler then ordered a steroid injection in September of 2000. The medical evidence Indicates that his pain improved and he left from the procedure in good condition. (Tr. p. 102). But, the plaintiff complained that the pain later returned. So, at the recommendation of Dr. Zigler, the plaintiff underwent discectomy/fusion surgery in January of 2001. Letters from Dr. Zigler indicate that plaintiff was doing much better, after the surgery. (Tr. p. 165).

The plaintiff continued to complain of left elbow pain. The plaintiff was examined for workman's comp insurance purposes by Dr. Susan Van de Water in August of 2001, to determine whether

complaints of his left elbow pain were related to the June 6th injury. (Tr. p. 186). Dr. Van de Water writes that "there was no deformity of the left elbow, no instability, no crepitation, and no effusion." An MRI was performed on September 17, 2001. Dr. Van de Water writes of the MRI: "Overall, the exam was thought by the radiologist to be normal." (Tr. p. 187).

In September of 2001, shortly before the administrative hearing, the plaintiff underwent a functional capacity evaluation. The results of the evaluation are in a letter from William Dodson, a physical therapist, to Dr. Zigler dated September 25, 2001. (Tr. 189). Dr. Dodson writes that the plaintiff is able to return to work and lift up to 62 pounds. (Tr. p. 189). Medium work is the ability to lift up to 50 pounds. *See* 20 C.F.R. § 404.1567(c), 416.967(c). The plaintiff was determined to be able to perform only medium work, presumably less that what he is truly capable of performing.

Finally, the ALJ considered the opinion of the state agency physician's assessment at the prehearing determination. Partial reliance on the State agency physician's assessment was proper. *See* 20 C.F.R. 404.1527(f)(2)(i) (stating that State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.) The state agency physician's report indicates that the alleged limitations caused by the plaintiff's symptoms were not expected to last 12 months from the injury. (Tr. p. 151).

The plaintiff argues that the ALJ did not rely upon Dr. Zigler's opinion because the Dr. Zigler advised the plaintiff's employer's insurance carrier that the plaintiff was totally disabled as late as May 30, 2001. (Tr. p. 159). However, a statement

made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act. *See Carey v. Apfel,* 230 F.3d 131, 141 fn. 1 (5th Cir.2000); *Barajas v. Heckler,* 738 F.2d 641, 645 (5th Cir. 1984). Dr. Zigler's statements that the plaintiff was disabled was in reference to his past job as a welder. It was not in reference to his ability to perform medium work, and it was not intended to classify the plaintiff for the purposes of the Social Security Act. Furthermore, Dr. Zigler writes that the plaintiff remains *temporarily* disabled, (Tr. p. 159), further proof that the plaintiff's condition was not a permanently disabling condition.

As for the plaintiff's complaint that the hearing and record were insufficient for an accurate RFC determination, the length of the hearing is insignificant and the evidence available was adequate. There were no inconsistencies between the medical evidence that would require gathering additional medical evidence. The only inconsistency was the plaintiff's own subjective complaints about his abilities discussed above.

■ Finally, the plaintiff argues that the ALJ's opinion is insufficient because it does not address whether or not the plaintiff can perform medium work on a continuing basis. The plaintiff cites *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986); *Wingo v. Bowen,* 852 F.2d 827 (5th Cir. 1988), and *Watson v. Barnhart,* 288 F.3d 212 (5th Cir.2002) as authority that the ALJ must specifically address whether the plaintiff can do medium work on a regular and continuing basis.

The ALJ did address whether the plaintiff can do medium work on a regular and continuing basis although he did not use those particular words. The ALJ stated the following in his findings: "Based on the evidence in its entirety, the claimant's

testimony concerning his subjective complaints and functional limitations was generally credible, but his testimony, the objective medical evidence, and reasonable inferences therefrom, does not support the conclusion that he is incapable of performing any level of *sustained* work activity." (emphasis added) (Tr. p. 15 line 5).

In *Singletary,* the appellate court found that Singletary had mental problems that surfaced from time to time unexpectedly. Although he could get and hold a job physically, he had reoccurring mental problems would render him unable to work on a continuing basis. *See Singletary,* 798 F.2d at 821. The ALJ was required to determine Singletary's residual functional capacity pursuant to Title 20 C.F.R., Section 404.1545(c) as it appeared at the time of the decision:

> (c) Mental Impairments: When we assess your impairment because of mental disorders, we consider factors such as your ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting.

The ALJ was required to consider the claimants RFC for work activity on a regular and continuing basis in assessing physical abilities, but not in considering mental impairments. *See* 20 C.F.R. § 404.1545(b). The appellate court in *Singletary* reversed the ALJ's decision and required the ALJ to determine additionally if a claimant's RFC for work activity can be done on a regular and continuing basis when dealing with mental impairments. *See Singletary,* 798 F.2d at 823. Because the RFC inquiry focuses on an applicant's physical abilities for work on a regular and continuing basis but not on mental impairments, the court concluded that an additional inquiry as to the applicant's ability to work on a regular and continuing basis was necessary to address such cases. *See id.*

In *Wingo, supra,* the court dealt with whether or not the ALJ's decision was supported by substantial evidence. The court held the following: "When making his determination that Wingo could perform gainful employment, the Secretary failed to consider the combination of impairments, and we cannot say therefore that the decision was supported by substantial evidence." *Wingo,* 852 F.2d at 831. "Thus, *Wingo* stands solely for the proposition that the Secretary must consider all of a disability applicant's physical and mental limitations when determining whether he or she can engage in substantial gainful activities." *Watson v. Barnhart,* 288 F.3d 212, dissent at 220–221 (5th Cir.2002). Therefore, *Wingo* does not state that the ALJ must address separately whether an applicant can do substantial work related physical and mental activities in a work setting on a regular and continuing basis.

In *Watson, supra,* the appellate court held that "[t]here was substantial evidence to support the ALJ's findings that Watson is capable of performing medium work and that Watson's back pain does not constitute a significant non-exertional impairment. However, the ALJ erred in failing to determine whether Watson was capable not only of obtaining employment, but also maintaining it." *See Watson,* 288 F.3d at 218. The *Watson* court, based upon the holding in *Singletary* dealing with mental impairments, applied the same standard to a determination of physical abilities. However, in doing so, the *Watson* court did not consider the regulation in Title 20, C.F.R., Section 404.1545(b) that requires the ALJ to consider an applicant's ability to do work on a regular and continuing basis in finding the claimant's RFC. The *Watson* court appears to be setting forth an additional requirement that is redundant to the requirements already placed on the ALJ by this regulation. Section

404.1545 changed in 1991, which was after the *Singletary* decision, and now mental limitations and physical abilities both require the ALJ to determine the claimant's RFC for work activity on a regular and continuing basis as part of its determination of RFC. "Social Security regulations define residual functional capacity as the physical ability to perform work activity 'on a regular and continuing basis.' 20 C.F.R. § 404.1545(b). Social Security Ruling 96–8p provides that residual functional capacity is an assessment of the individual's ability to do 'sustained work related physical and mental activities in a work setting on a regular and continuing basis which means 8 hours a day, for 5 days a week, or an equivalent work schedule.' Thus, inherent in every residual functional capacity assessment is a finding that the claimant can perform work on a regular and continuing basis, and thus can maintain employment." *See Dunbar v. Barnhart*, 223 F.Supp.2d 795, 802 (W.D.Tex. 2002).

The Circuit Court considers these regulations and rulings to be relevant to any decision. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.2001). However, it does not appear that *Watson* considered these regulations in its decision, and therefore this Court does not believe that it applies to the case before this Court.

### CONCLUSION

There is substantial evidence in the record that the claimant can perform medium work on a continuing basis. The ALJ relied on all the relevant medical evidence, including that of the treating physician, and had more than sufficient information to make an accurate RFC determination. Inherent in every RFC assessment is a finding that the plaintiff can perform work on a regular and continuing basis. The ALJ found that the plaintiff was capable of doing medium work on a sustained basis as is required by the regulations and remand

is not necessary. Therefore, the Commissioner's motion for summary judgment is **GRANTED** and the case is **DISMISSED**.